

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00213-CV

Mark A. **CANTU**,
Appellant

v.

**GUERRA & MOORE, LLP**, Carlos Guerra, J. Michael Moore, and David Lumber,
Appellees

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2012CVQ0001154-D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Catherine Stone, Chief Justice
                Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  June 25, 2014

REVERSED AND REMANDED

Seeking a bill of review, Appellant Mark Cantu petitioned the trial court to set aside its

August 4, 2008 judgment against him for $1.6 million in damages for legal fees in a product

liability suit claiming the wrongful death of Santa Magdalena Gonzalez.  His petition alleged that

Appellees Guerra & Moore, LLP, Carlos Guerra, J. Michael Moore, and David Lumber conspired

to defraud him of the legal fees he earned in the Gonzalez wrongful death suit, and the parties'

efforts prevented him from fully litigating claims or defenses he might have asserted.  The trial

court granted Appellees' traditional motion for summary judgment, dismissed Cantu's petition for

bill of review, and Cantu appealed. We conclude that the summary judgment evidence raises a genuine issue of material fact on each of Appellees' theories, and the trial court erred by granting their motion. We reverse the trial court's judgment and remand this cause to the trial court.

## BACKGROUND

Only the bill of review cause is before us, but this appeal involves two suits: the Gonzalez wrongful death suit filed in 2005, and a bill of review cause from 2012.

### A. Gonzalez Wrongful Death Suit[1]

The Gonzalez wrongful death suit arose from a September 2004 fiery explosion of a natural gas water heater. A brother and his minor sister were burned; the sister, Santa Magdalena Gonzalez, died of her injuries. Initially Guerra & Moore, LLP represented the family members, but Cantu's firm took over the case. Cantu's firm filed an original petition in July 2005. In November 2006, some of Cantu's associates left his firm, started their own firm, Romero, Gonzalez & Benavides, and took the wrongful death case with them. Cantu intervened and sued for his fee. RG&B obtained a $4 million settlement for the plaintiffs, and the settlement funds were deposited into the trial court's registry. Cantu reached an agreement with his former associates, and, on April 25, 2007, the trial court signed an agreed order dividing the $1.6 million fee between Cantu, RG&B, and another law firm that is not a party in this appeal.

### B. G&M's Intervention

Sometime before Cantu could obtain his fee from the registry, G&M intervened and sued Cantu for libel, tortious interference with contract, and tortious interference with a prospective

---

[1] Trial court cause number 2005-CVQ-000954-D2. Our recitation of the facts regarding the wrongful death suit—and the accompanying interventions and countersuits—is based on the limited record before us. None of the parties brought forward the clerk's or reporter's records from the wrongful death suit. Some facts relevant here are found in the background section of this court's previous opinion. *See Cantu v. Guerra & Moore, Ltd., LLP*, 328 S.W.3d 1, 4–5 (Tex. App.—San Antonio 2009, no pet.).

contract. Cantu filed a third-party plaintiff original petition against RG&B for common-law fraud, breach of fiduciary duty, negligent supervision, civil conspiracy, unjust enrichment, and conversion. RG&B counterclaimed against Cantu for breach of the settlement agreement and fraud. Cantu also counterclaimed against G&M for conspiracy.

The case was tried to a jury in April and May of 2008. The trial court granted a directed verdict against Cantu on his conspiracy counterclaim against G&M. For G&M's damages claim, the deceased girl's father and brother received a $4 million judgment, and G&M's contingency fee agreement specified a 40% fee. The jury awarded G&M damages of $1.6 million. The trial court signed the final judgment on August 4, 2008.

Cantu appealed the judgment to this court. He contended the evidence was insufficient for the jury to find that he interfered with a prospective contract between the father and G&M. Cantu did not appeal the jury's finding that he tortiously interfered with the contract between G&M and the brother or the trial court's order on the directed verdict against his conspiracy counterclaim. This court affirmed the trial court's judgment in all aspects relevant here. *See Cantu v. Guerra & Moore, Ltd., LLP*, 328 S.W.3d 1 (Tex. App.—San Antonio 2009, no pet.).

C.      **Bill of Review**[2]

On August 3, 2012, Cantu filed a petition for a bill of review. He alleged he had recently discovered evidence unknown to him at the time of trial that Appellees, RG&B, and Zacarias Gonzalez and his family members conspired to defraud him of his fee by paying key witnesses to perjure themselves in their testimony regarding the claims over attorney's fees. On September 7, 2012, G&M simultaneously filed its answer and a motion for summary judgment. Cantu filed an amended petition which did not name RG&B or its named partners. The trial court granted

---

[2] Trial court cause number 2012-CVQ-001154-D2.

Appellees' traditional motion for summary judgment, and effectively denied Cantu's amended petition.  Cantu appeals the trial court's judgment.

## STANDARD OF REVIEW

To be entitled to summary judgment, a movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law."  TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).  If the movant presents multiple theories in support of its motion and the trial court grants the motion without specifying the basis for its decision, "we must affirm the trial court's judgment if any of the theories advanced are meritorious."  *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *accord Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).  In evaluating each theory, we examine the summary judgment evidence in the light most favorable to the nonmovant: we credit favorable evidence and disregard contrary evidence as reasonable jurors would.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).  "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor."  *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *accord Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam).

A defendant-movant is not entitled to summary judgment unless it conclusively proves each element of its defense, *see Rhône–Poulenc*, 997 S.W.2d at 223; *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984), or conclusively disproves at least one essential element of each of the plaintiff's claims, *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995).  If the summary judgment evidence presents a genuine issue of material fact, the movant is not entitled to summary judgment. *Elliott–Williams*, 9 S.W.3d at 803; *Rhône–Poulenc*, 997 S.W.2d at 223.

**APPELLEES' MOTION FOR SUMMARY JUDGMENT**

In their motion for summary judgment against Cantu's petition for a bill of review, Appellees presented four theories to deny Cantu's petition and grant Appellees' motion:

- Cantu alleges only intrinsic fraud, which will not support a bill of review;
- Cantu's complaints have already been litigated, and a bill of review is not available as an additional remedy;
- Cantu cannot obtain an equitable remedy because he has unclean hands; and
- Cantu's conspiracy claim has a fatal defect because there was no underlying intentional tort and his claim is barred by res judicata.[3]

The trial court granted Appellees' traditional motion for summary judgment, but did not state the basis for its decision.  Therefore, we must review Appellees' theories to determine whether they are entitled to summary judgment on any one.  *See Urena*, 162 S.W.3d at 550; *Knott*, 128 S.W.3d at 216.  Because each of Appellees' theories attacks Cantu's right to a bill of review, we first recite the applicable law governing bills of review.

**EQUITABLE BILL OF REVIEW**

**A.    Purpose, Availability**

A trial court may set aside its former judgment after its plenary power has expired only "by bill of review for sufficient cause."  TEX. R. CIV. P. 329b(f); *accord State v. 1985 Chevrolet Pickup Truck*, 778 S.W.2d 463, 464 (Tex. 1989) (per curiam); *Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex. 1979).  "A bill of review proceeding is an equitable one designed to prevent manifest injustice.  But while manifest injustice to the [petitioner] is a material consideration, another is the necessity for there being finality to judgments."  *Hanks v. Rosser*, 378 S.W.2d 31, 33 (Tex. 1964).  A bill of review enables a court to exercise its equitable powers to balance the need for finality of

---

[3] On appeal, Appellees abandoned their "fatal defect" argument, and we do not consider it.  *See Republic Supply Co. v. Waggoner*, 283 S.W. 537, 539 (Tex. Civ. App.—Amarillo 1926, writ ref'd); *see also Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Kunz v. Van Buskirk*, No. 04-00-00704-CV, 2001 WL 855454, at *1 (Tex. App.—San Antonio July 31, 2001, no pet.) (mem. op.).

judgments with the need to protect judgments from certain types of fraud. *Id.*; *see Montgomery*, 669 S.W.2d at 312 (quoting *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950)). The policy limiting relief from final judgments "arises from a general level of confidence that the adversarial process leading to judgment is reasonably effective to ascertain the merits of the controversy." *Browning v. Prostok*, 165 S.W.3d 336, 348 (Tex. 2005). But if "'fraud [has] distort[ed] the judicial process to such an extent that confidence in the ability to discover the fraudulent conduct through the regular adversarial process is undermined,'" a court may grant a bill of review to correct such a distortion, *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012) (quoting *Browning*, 165 S.W.3d at 348), and prevent manifest injustice, *see Hanks*, 378 S.W.2d at 33.

**B.      Bill of Review Elements**

To be entitled to a bill of review—and thereby a new trial in the underlying cause—the "bill of review petitioner must ordinarily plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that the petitioner was prevented from making by the fraud, accident or wrongful act of his or her opponent, and (3) the petitioner was not negligent." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003) (citing *Alexander*, 226 S.W.2d at 998). If the petitioner alleges fraud, the petitioner must show the fraud was extrinsic fraud: "Only extrinsic fraud will support a bill of review." *King Ranch*, 118 S.W.3d at 752; *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989) (orig. proceeding).

**C.      Not an Additional Remedy**

"[A] bill of review may not be used as an additional remedy after one . . . has made a timely but unsuccessful appeal" of a matter "developed in [a previous] trial and appeal." *Rizk v. Mayad*, 603 S.W.2d 773, 776 (Tex. 1980); *accord McIntyre v. Wilson*, 50 S.W.3d 674, 679 (Tex. App.— Dallas 2001, pet. denied).

**FIRST THEORY: NO EXTRINSIC FRAUD**

As their first theory for summary judgment, Appellees assert they are entitled to judgment as a matter of law because the summary judgment evidence conclusively proves Cantu alleged only intrinsic fraud and he failed to raise a genuine issue of material fact on extrinsic fraud. Before we analyze Appellees' assertion, we review the applicable law distinguishing the two types of fraud.

**A.      Extrinsic Fraud**

"Extrinsic fraud is fraud that denied a party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted." *King Ranch*, 118 S.W.3d at 752; *accord Browning*, 165 S.W.3d at 347; *Montgomery*, 669 S.W.2d at 313 ("Extrinsic fraud is conduct that prevents a real trial upon the issues involved."). Extrinsic fraud is "'some deception practiced by [an opposing party], collateral to the issues in the case, which prevent[ed] the petitioner from fully presenting' claims or defenses in the underlying action." *King Ranch*, 118 S.W.3d at 753 (second alteration in original) (quoting *Bakali v. Bakali*, 830 S.W.2d 251, 255 (Tex. App.—Dallas 1992, no writ)). "[Extrinsic] fraud must be collateral to the matter tried and not something which was actually or potentially in issue." *Browning*, 165 S.W.3d at 347; *accord Montgomery*, 669 S.W.2d at 312.

Courts conclude that fraud is extrinsic in those rare instances when a "'fraud distorts the judicial process to such an extent that confidence in the ability to discover the fraudulent conduct through the regular adversarial process is undermined,'" *PNS Stores*, 379 S.W.3d at 275 (quoting *Browning*, 165 S.W.3d at 348), and the need to correct such a distortion outweighs the need for finality of judgment, *see id.*

**B.** **Intrinsic Fraud**

"Intrinsic fraud, by contrast, 'relates to the merits of the issues [that] were presented and presumably were or should have been settled in the former action.'" *Browning*, 165 S.W.3d at 347–48 (alteration in original) (quoting *Tice*, 767 S.W.2d at 702). "Intrinsic fraud includes fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering judgment." *Browning*, 165 S.W.3d at 348; *accord Tice*, 767 S.W.2d at 702; *Alexander*, 226 S.W.2d at 1001. As a matter of law, "[intrinsic] fraud will not support a bill of review, because each party must guard against adverse findings on issues directly presented." *King Ranch*, 118 S.W.3d at 752. Generally, a mere "[a]llegation[] that a plaintiff conspired to suborn perjury is an allegation of intrinsic fraud." *Browning*, 165 S.W.3d at 348; *accord Tice*, 767 S.W.2d at 702; *Montgomery*, 669 S.W.2d at 313. Courts conclude fraud is intrinsic if the fraud did not prevent the petitioner from presenting a claim or defense and thus the strong need for finality of judgment outweighs the evidence of some distortion of the judicial process. *See King Ranch*, 118 S.W.3d at 751–52; *Alexander*, 226 S.W.2d at 998.

**C.** **Summary Judgment Evidence of Extrinsic Fraud**

For purposes of our review, we take as true the facts raised in Cantu's affidavits, and we draw reasonable inferences from them. *See Rhône–Poulenc*, 997 S.W.2d at 223; *Mayes*, 236 S.W.3d at 756. We review the evidence to determine whether Cantu raised a genuine issue of material fact on whether Appellees committed a fraud that "distort[ed] the judicial process to such an extent that confidence in the ability to discover the fraudulent conduct through the regular adversarial process [was] undermined." *See PNS Stores*, 379 S.W.3d at 275 (quoting *Browning*, 165 S.W.3d at 348). We recite some of Cantu's summary judgment evidence that shows—in addition to perjury—specific plans and actions to present to the court witnesses who would perjure themselves to prevent Cantu from presenting a meritorious defense to Appellees' claims.

### 1.    *Affidavit of Javier Fuentes*

In his evidence, Cantu provided an affidavit from Javier Fuentes, who averred the following.  In June 2011, he told Cantu that RG&B offered to pay him a percentage of their fees from the wrongful death suit if he could get the plaintiffs to terminate Cantu and engage RG&B. RG&B gave him several thousand dollars in cash to help him convince the plaintiffs' family to testify falsely against Cantu, and he convinced them to do so.

### 2.    *Affidavit of Mark Cantu*

Cantu also provided his own affidavit, in which he averred the following.  In September of 2011, Fuentes told him about a conspiracy between Appellees, RG&B, and the plaintiffs' family members to defraud him out of his attorney's fees.  In his subsequent investigation, he obtained affidavits from several of the alleged conspirators, and all confirmed the conspiracy with specificity.  He learned that, in their efforts to defraud Cantu of his attorney's fees, Appellees conspired with RG&B, Javier Fuentes, Zacarias Gonzalez and his family members, and others to present witnesses to the court who would perjure themselves to benefit the conspiracy and prevent Cantu from presenting a defense.  The conspirators, led by Appellees, promised to make—and made—cash payments to at least one party-witness (Zacarias Gonzalez); promised additional payments to at least one party-witness (Zacarias Gonzalez) and his other family members; and implied or stated that the wrongful death suit settlement could be at risk if the Gonzalez family did not assist Appellees and RG&B as requested.  As another part of the conspiracy, RG&B agreed to pay G&M a portion of its fee.  Cantu included a copy of a check for $300,000 from RG&B to one of G&M's partners.  Because he did not learn the specific plans, actions, and evidence of this alleged conspiracy—including the fact that the conspirators had already paid, and promised more payments from Appellees' suit against him and threatened the Gonzalez family members'

settlement—until more than three years after the trial concluded, Cantu was unable to present as a defense this evidence of an orchestrated effort outside the regular judicial process.

**D.      Effect of Alleged New Evidence of Extrinsic Fraud**

Taking Cantu's evidence as true, and making reasonable inferences and resolving doubts in his favor, we must determine whether Cantu's evidence raised a genuine issue of material fact on the question of Appellees' alleged extrinsic fraud.

The parties each cite *Tice* to support their mutually exclusive positions on whether there is some evidence of extrinsic fraud. We address *Tice* first because it is instructive in understanding supreme court precedent governing bills of review.

**E.      *Tice v. City of Pasadena***

*1.      Background*

In *Tice*, the families of boys injured and killed in an automobile accident sued the City of Pasadena for wrongful death and personal injury. *Tice*, 767 S.W.2d at 701. The jury found Pasadena negligent for failing to barricade the ditch into which the automobile crashed. *Id.* Pasadena appealed to the court of appeals and the supreme court, but both forums affirmed the trial court's judgment in all aspects relevant here. *Id.* at 702. After the supreme court's mandate issued, Pasadena filed a bill of review. *Id.* It insisted the deceased teen driver knew the ditch was at the end of the street and he was intentionally speeding to make his car jump the ditch. *Id.* It alleged the deceased and injured boys' parents conspired to defraud Pasadena by suppressing evidence through perjury and concealing the identity of material witnesses. *Id.* at 703. The supreme court reiterated that a conspiracy to suborn perjury is intrinsic fraud if it "relates to the merits of the issues which were presented and presumably were or should have been settled in the former action." *Id. at 702.* It rejected Pasadena's petition for bill of review.

### 2. *Examining Tice's Reasoning*

In *Tice*, like in *King Ranch* and *PNS Stores*, the supreme court exercised its equitable powers by balancing the need for finality of judgments against the need to correct distortions of the judicial process. *See PNS Stores*, 379 S.W.3d at 275; *King Ranch*, 118 S.W.3d at 751; *Tice*, 767 S.W.2d at 705.

#### a. Need for Finality of Judgments

In weighing the need for finality, the *Tice* court recited a number of factors. It identified the "fatal flaw" in Pasadena's petition: its bill of review issues were, or could have been, already litigated. *Tice*, 767 S.W.2d at 704. Specifically, the driver's "prior knowledge of the scene of the accident was fully in controversy in the original trial, as was the question of any of the occupants of the vehicle having made statements about attempting to jump the ditch." *Id.* It also noted the parties who were harmed had not been compensated, *id.* at 702, and any further litigation would delay the effect of its mandate, *id.* at 705.

#### b. Need to Prevent Distortions of Judicial Process

In weighing the need to prevent distortions of the judicial process, such as judgments procured by extrinsic fraud, the court noted Pasadena proffered no more than mere allegations of an implied conspiracy. *Id.* at 703. Pasadena admitted it "had no information on . . . the participants, time, place, manner, circumstances or nature of any [conspiracy]; the manner, method, or way in which this prevented Pasadena from making a defense; and the manner of participation by Relators in the alleged conspiracy, fraud, or subornation of perjury." *Id.* at 704.

#### c. *Tice's* Balance

In *Tice's* balancing, the court seemed to weigh heavily the factors favoring the need for finality of judgments. On the other hand, the court seemed to give little, if any, weight to factors

- 11 -

alleging a distortion based on nothing more than, at best, an *implied* conspiracy.  *See id.* at 703 (characterizing Pasadena's complaint as alleging nothing more than an "*implied* conspiracy").

In its conclusion, the *Tice* court summarized the equitable factors it weighed most heavily and concluded were dispositive:

> [I]t clearly appears that the bill of review constitutes an attempt on the part of Pasadena to relitigate the same issues which have already been litigated by the same parties and which have been decided by this court, and that such suit would interfere with the judgment of this court . . . .

*Id. at* 705.  The *Tice* court concluded the strong need for finality of judgment outweighed the need to protect against a mere allegation of a distortion of the judicial process, especially when the petition had a "fatal flaw" in that its alleged facts had already been tried.  *See id.* at 704–05.  As the *Tice* court balanced the equities in its case, it decided the equities did not weigh in favor of granting Pasadena's petition for a bill of review, and thus concluded that Pasadena raised only allegations of intrinsic fraud.  *See id.*  Having reviewed *Tice*'s factors and balancing, we now consider *Tice*'s applicability here.

### 3.    *Distinguishing* Tice

To begin, we review the equitable factors present in this case that apply to the need for finality of judgments and the need to correct distortions of the judicial process that undermine the regular adversarial process.  *See PNS Stores*, 379 S.W.3d at 275; *Tice*, 767 S.W.2d at 705.

In reviewing the equitable factors, whether in this case or in others, we are not reluctant to jealously guard the finality of judgments, and we do not hold that any change in an allegation of fraud or perjury, or even an occasional injustice, will entitle a petitioner to have a final judgment set aside.  *Cf. Montgomery*, 669 S.W.2d at 312; *Alexander*, 226 S.W.2d at 998.  Certainly, a petitioner is barred from a bill of review if the matter was "actually or potentially in issue" at trial.

*Browning*, 165 S.W.3d at 347; *Tice*, 767 S.W.2d at 702; *Montgomery*, 669 S.W.2d at 312; *Rizk*, 603 S.W.2d at 776.

But we must also guard against distortions of the judicial process that undermine the parties' and the public's confidence in a transparent adversarial process. *See Browning*, 165 S.W.3d at 348. We must not blindly reject all petitions in the name of finality of judgments because "to fully insulate judgments from attack would give great protections to the most devious parties." *Id.* We must not allow alleged conspirators' egregious deceptions to obtain protective resort in the policy of finality of judgments. *See PNS Stores*, 379 S.W.3d at 275 (citing *Browning*, 165 S.W.3d at 438).

### a.    Finality Factors

In his bill of review, Cantu petitioned the trial court to exercise its equitable powers and set aside its final judgment. The judgment shows Cantu litigated a conspiracy claim against G&M, but it does not recite the bases for that claim—such as the specific actors, actions, and evidence considered by the trial court. Appellant and Appellees each characterize the conspiracy claim that was litigated, but we do not have the pleadings or transcripts before us. Because we are reviewing the trial court's grant of Appellees' motion, we are limited to the facts presented in the summary judgment evidence, *see* TEX. R. CIV. P. 166a(c); *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995), and we must take Cantu's summary judgment evidence as true and make all reasonable inferences in his favor, *see Mayes*, 236 S.W.3d at 756; *Rhône–Poulenc*, 997 S.W.2d at 223.

Reviewing the summary judgment evidence before us, we conclude the facts here are unlike those in *King Ranch*. *Cf. King Ranch*, 118 S.W.3d at 753. Cantu's evidence provides some support for his arguments that Appellees' fraud, bribery, perjury, and coercion prevented him from presenting a meritorious defense to Appellees' claims. *Cf. id.* Cantu presented new evidence of

Appellees' fraud including the specific plans, actions, and evidence put forth in his summary judgment evidence. *Cf. id.* (rejecting a claim of extrinsic fraud because "none of the evidence . . . supports an inference that [the party opponent] engaged in extrinsic fraud, because it does not provide 'proof of some deception practiced by [the party opponent] . . . which prevent[ed] the petitioner from fully presenting' claims or defenses in the underlying action").

Moreover, the wrongful death suit parties (i.e., father, son) had already been compensated, and RG&B had been paid its attorney's fees; only G&M's claim for attorney's fees remained unpaid. Taking Cantu's evidence as true, the alleged conspirators would be the primary beneficiaries of enforcing the finality of the challenged judgment. *Cf. Tice*, 767 S.W.2d at 702, 705 (noting the plaintiffs—against whom Pasadena admitted it could not present any witness or evidence—had not been compensated and further litigation would delay their remedy).

We turn to the equitable factors pertaining to distortion of the judicial process. *See PNS Stores*, 379 S.W.3d at 275; *Browning*, 165 S.W.3d at 348.

### b. Distortion Factors

Cantu's summary judgment evidence alleges egregious attempts to distort the judicial process—e.g., that Appellees conspired with Fuentes to bribe the parties to perjure themselves, that RG&B agreed to a kickback to Appellees, and that RG&B—potentially under Appellees' direction—coerced or unduly influenced Zacarias Gonzalez into believing his family's settlement would be at risk if he did not cooperate with the conspirators. Several alleged conspirators' affidavits aver that Appellees led a conspiracy to defraud Cantu of his attorney's fees. The affidavits include specific allegations of participants, time, place, manner, circumstances, and nature of the conspiracy. *Cf. Tice*, 767 S.W.2d at 704. Cantu's response describes how this conspiracy prevented him from presenting a defense alleging the specific plans, actions, and evidence of this alleged conspiracy. *Cf. id.* Cantu's evidence also included specific allegations

- 14 -

that Appellees participated in the alleged conspiracy. *Cf. id.* Appellees vigorously deny Cantu's allegations, but under the applicable standard of review, we must take Cantu's evidence as true. *See Rhône–Poulenc*, 997 S.W.2d at 223.

## F.      Conclusion

Courts are entrusted with equitable powers to balance competing policies in specific circumstances. *See, e.g.*, *Hanks*, 378 S.W.2d at 33 (addressing a bill of review). In exercising its equitable powers, a court must balance the need for finality of judgment with the need to prevent distortions of the judicial process that undermine "confidence in the ability to discover the fraudulent conduct through the regular adversarial process." *See PNS Stores*, 379 S.W.3d at 275; *Hanks*, 378 S.W.2d at 33 ("A bill of review proceeding is an equitable one designed to prevent manifest injustice. But while manifest injustice to the defaulting party is a material consideration, another is the necessity for there being finality to judgments.").

Here, the summary judgment evidence raises genuine issues of material fact on whether Appellees' alleged deceptions prevented Cantu from presenting any claims or defenses on the specific plans, actions, and evidence of conspiracy, bribery, perjury, and coercion allegations he raised by his petition; whether he could have reasonably discovered these matters before trial or appeal, *see King Ranch*, 118 S.W.3d at 753; whether any claim or defense was, could have been, or should have been "presented to and considered by the [fact-finder] in rendering judgment," *see Browning*, 165 S.W.3d at 347–48; and whether the judicial process was distorted "to such an extent that confidence in the ability to discover the fraudulent conduct through the regular adversarial process [was] undermined" and Cantu was denied "the opportunity to fully litigate at trial all the rights or defenses that could have been asserted," *see PNS Stores*, 379 S.W.3d at 275; *Browning*, 165 S.W.3d at 348; *King Ranch*, 118 S.W.3d at 752. Therefore, we hold that Cantu's summary judgment evidence raises a genuine issue of material fact on whether Appellees committed

extrinsic fraud, and summary judgment on this theory was not proper. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49.

We turn to the next theory for summary judgment asserted by Appellees.

### SECOND THEORY: ISSUES ALREADY LITIGATED, APPEALED

As a second theory on which to grant their motion for summary judgment, Appellees asserted that Cantu had already litigated and appealed his conspiracy claim, and he was not entitled to additional process by bill of review.

We agree that "a bill of review may not be used as an additional remedy after one . . . has made a timely but unsuccessful appeal" of a matter "developed in [a previous] trial and appeal." *Rizk v. Mayad*, 603 S.W.2d 773, 776 (Tex. 1980); *accord McIntyre v. Wilson*, 50 S.W.3d 674, 679 (Tex. App.—Dallas 2001, pet. denied). But as we have already concluded, taking Cantu's summary judgment evidence as true and making reasonable inferences in his favor, *see Rhône–Poulenc*, 997 S.W.2d at 223, Cantu raised a genuine issue of material fact on whether he was prevented by Appellees' alleged deception from presenting the specific plans, actions, and evidence of the conspiracy, fraud, perjury, and coercion defense he raised in his petition for bill of review. Cantu also raised a fact issue on whether he was only able to discover Appellees' misconduct years after the Gonzalez wrongful death suit ended, and he could not have previously presented the specific plans, actions, and evidence he proffered in his petition. Thus, Cantu has raised a genuine issues of material fact on whether he is seeking an additional review of the specific elements and evidence of conspiracy, fraud, perjury, and coercion that were, or could have reasonably been, already litigated and appealed, and *Rizk* and *McIntyre* are distinguishable. *See Rizk*, 603 S.W.2d at 776; *McIntyre*, 50 S.W.3d at 679. Therefore, the trial court could not have properly granted Appellees' motion for summary judgment on this theory.

We turn to Appellees' third theory for summary judgment.

**THIRD THEORY: CANTU'S UNCLEAN HANDS BAR EQUITABLE RELIEF**

In their motion for summary judgment, Appellees asserted that Cantu was not entitled to any equitable relief—such as a bill of review—because of his unclean hands.

**A.      Applicable Law**

Unclean hands is an affirmative defense that may bar a party with unclean hands from obtaining equitable relief.  *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988); *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988) ("It is well-settled that a party seeking an equitable remedy must do equity and come to court with clean hands.").  A summary judgment movant who asserts the affirmative defense of unclean hands must conclusively prove all elements of their unclean hands defense.  *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 876 (Tex. App.—Dallas 2005, no pet.).  The movant must prove, inter alia, "he has been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine" of unclean hands.  *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App.—San Antonio 2003, no pet.).  If the summary judgment evidence raises a genuine issue of material fact, summary judgment is not proper.  *See, e.g.*, *Lazy M Ranch, Ltd. v. TXI Operations, LP*, 978 S.W.2d 678, 683 (Tex. App.—Austin 1998, pet. denied).

**B.      Summary Judgment Evidence**

In their motion for summary judgment, Appellees asserted "[t]he evidence in this case conclusively proves that Cantu has unclean hands."  Their motion asked the trial court to take judicial notice of its own record from the underlying trial, and accept the trial record as their summary judgment evidence on point.  As evidence, Appellees' motion recites excerpts from the trial court's sanctions order against Cantu for such actions as "engag[ing] in a pattern, scheme, and practice of repeated and purposeful violations of motion in limine rulings, rulings of the Court on objections and evidence and the Court's instructions."  But Appellees' motion did not contend they

had been seriously harmed or the harm could not be corrected without denying Cantu's petition for bill of review. *Contra Bopp*, 126 S.W.3d at 221. On the other hand, Cantu's response challenged both of these essential elements.

### C. Genuine Issue of Material Fact Raised

To be entitled to summary judgment on their unclean hands defense, Appellees had to allege and conclusively prove, inter alia, they had been seriously harmed by Cantu's conduct and that harm could not be corrected except by denying Cantu's petition for bill of review. *See id.* We conclude the summary judgment evidence raises a genuine issue of material fact on whether the harms Appellees complain of were resolved by the trial court's sanctions order in G&M's favor and its grant of their motion for summary judgment.

Because the summary judgment evidence raises a genuine issue of material fact on the unclean hands defense, it was not a proper theory for the trial court to grant summary judgment. *See Adams*, 154 S.W.3d at 876; *Bopp*, 126 S.W.3d at 221.

### CONCLUSION

In their traditional motion for summary judgment against Cantu's petition for bill of review, Appellees proffered several theories on which the trial court could grant their motion. The trial court granted the motion without stating the basis for its decision. Having reviewed the evidence, we conclude Appellant's summary judgment evidence raises a genuine issue of material fact on each of the reviewable theories, and the trial court erred by granting Appellees' traditional motion. We reverse the trial court's judgment and remand this cause to the trial court.

Patricia O. Alvarez, Justice