

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-21-00372-CV

**EAGLE ROCK TIMBER, INC.**,
Appellant

v.

**ROCK HARD RENTAL, LLC** and Solid Rock Crushing, LLC,
Appellees

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 18992B
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: March 15, 2023

AFFIRMED

Appellant Eagle Rock Timber, Inc. ("ERT") owns certain machinery used in crushing rocks. Appellee Rock Hard Rentals, LLC ("RHR") rented ERT's equipment and sublet ERT's equipment to appellee Solid Rock Crushing, LLC ("SRC"), who used it in a Kerr County mining operation under a contract with Wheatcraft, Inc. ("Wheatcraft"). This appeal comes before this court after a bench trial in which the trial court found ERT liable to (1) RHR for over $350,000 and (2) SRC for approximately $600,000. We affirm.

**BACKGROUND**

RHR has one member, Sonny Heittola, who has over forty years' experience in the rock crushing business. Heittola has a longstanding relationship with ERT and one of its owners, Rick Gokey.

***ERT Becomes Indebted to RHR***

When Heittola met Gokey in 2013, Heittola was working for Hanson Custom Crushing, Inc. ("HCC") in North Dakota on a project with ERT. Although the amount was disputed, ERT owed HCC money:



As part of a buyout from HCC in early 2017, Heittola assumed HCC's potential liability for an allegedly out-of-specification material on the North Dakota project. HCC also assigned Heittola its account receivable for ERT. While negotiating the buyout, Heittola and Gokey discussed the account receivable and the potential liability for the allegedly out-of-specification material. In one discussion, Gokey agreed to pay Heittola $90,000 to resolve ERT's account receivable and forgive any potential liability for the allegedly out-of-specification material. However, ERT never paid any of the $90,000. Gokey claims the $90,000 debt was to be credited to leasing ERT's equipment to RHR for a project in Kerr County, Texas. Heittola denies that was part of any deal.

Another part of Heittola's buyout from HCC involved the assignment of equipment to Heittola which HCC owned and rented to ERT. Since 2017, HCC's equipment had been in ERT's possession. When Heittola later went to retrieve the equipment in 2021, he found that it had been

damaged. Heittola assigned to RHR his interest in the account receivable, the liability on the out-of-specification material, and the title to the equipment from the HCC buyout:



### *ERT Agrees to Rent Equipment for Wheatcraft Project*

Heittola also held a one-half ownership interest in SRC. On September 27, 2017, Wheatcraft retained SRC as a contractor on the Wheatcraft project in Kerr County, Texas:



Heittola met with Gokey in early October 2017 to discuss renting some of ERT's equipment to use on the Wheatcraft Project. Heittola knew ERT was having cash flow problems and was having trouble making payments on its financed equipment, so he thought he could get a good rental rate for the equipment.

ERT orally agreed to rent the equipment to RHR, and although draft agreements were exchanged, no written agreement was ever executed. On October 16, 2017, ERT's principal signed a draft agreement reflecting certain terms, including the payment of approximately $14,000 per month for RHR's rental of ERT's equipment. The trial court found that ERT agreed to lease its equipment to RHR for ERT's payments on the financing in place on the equipment. Gokey testified that the rental rate for RHR was a "pass-through" of ERT's monthly payments on the equipment (because the rate was the exact monthly payment ERT was making to its lenders):



### *RHR Begins Wheatcraft Project*

Pursuant to their oral agreement, ERT allowed RHR to move equipment from North Dakota to Texas. Over the next six weeks, Gokey sought to have RHR sign draft lease agreements. One draft contained a rental rate of $23,850 per month, and one had a rental rate of $31,850 per month. RHR refused to sign and instead modified one of the draft lease agreements (and returned it to ERT) reflecting a lower amount. Heittola testified he would not sign a written lease agreement unless it contained the rental rates agreed to in early October 2017. By December 8, 2017, Gokey knew ERT would never have an acceptable equipment lease agreement in writing with RHR. Nevertheless, ERT did not seek the return of the equipment and allowed it to remain in Texas for months.

On December 15, 2017, SRC began working on the Wheatcraft project using ERT's equipment rented from RHR. According to testimony adduced at trial, it is standard industry practice to not begin rental charges on rented heavy equipment until the equipment is set up and producing. After December 15, 2017, SRC and RHR were unable to reach Gokey by phone or text message.

### *ERT Repossesses Equipment and Files Lien*

On February 14, 2018, ERT appeared at the Wheatcraft project and presented invoices for use of equipment from November 2017 to February 2018. The invoices were allegedly sent to RHR two days earlier. The invoices listed no past-due amounts and all had sequential invoice identification numbers. They were all created concurrently in February 2018 and were prepared for Gokey to provide to Wheatcraft.

After arriving in Texas, Gokey met with Wheatcraft and then with RHR and SRC, from whom he demanded to be immediately paid $127,000, reflecting a rental cost of $31,750 per month. Gokey testified that amount represented "the entire amount of November, December, and January, then whatever days we went into February." RHR and SRC offered ERT payment of $42,000 (representing three months of rent at $14,000 per month). Gokey rejected the offer.

On February 26, 2018, ERT notified Wheatcraft of ERT's intent to file a lien on Wheatcraft's property. In response, Wheatcraft "trapped" funds payable to SRC based on ERT's threat that Wheatcraft's owner would face personal liability if he violated the fund trapping requirement under the lien. Two days later, ERT shut down Wheatcraft project operations and repossessed the equipment. RHR and SRC helped ERT dismantle the crushing equipment so that it could be hauled off site by seven trucks ERT brought to the site. ERT's repossession occurred less than thirty days after the invoices were allegedly sent to RHR and SRC. SRC asserted that approximately $190,000 in work (with a profit of $65,000 to SRC) remained incomplete on the Wheatcraft project.

On April 5, 2018, ERT filed a lien on the Wheatcraft property for $242,395.44 to secure payment for the equipment ERT furnished on the project:[1]

---

[1] On August 23, 2018, ERT executed an amended affidavit claiming lien.



On April 13, 2018, SRC and RHR sent a letter advising ERT to remove its lien on the basis it was invalid and fraudulent; ERT refused. Also on April 13, 2018, Century Asphalt signed a deal with SRC on a new project that the two had previously orally agreed on. SRC claims it was damaged because it was ultimately unable to undertake this project because of ERT's fraudulent lien. SRC projected the profits from the Century Asphalt to be around $440,000. According to SRC, it lacked sufficient funds to procure the necessary equipment to commence the Century Asphalt project because of ERT's inflated lien. Thus, SRC could not make it to the Century Asphalt project in time, and the job was lost:



*Litigation History*

On November 15, 2018, ERT filed its original petition against SRC, RHR, and Wheatcraft for breach of contract, quantum meruit, and lien-related claims. Among other causes of action, SRC and RHR counterclaimed for breach of contract and for a fraudulent lien under the Fraudulent Lien Statute (Chapter 12 of the Texas Civil Practice & Remedies Code). In full settlement of claims against it, Wheatcraft paid ERT $100,000 that it had trapped, and Wheatcraft was nonsuited. After a bench trial, the trial court awarded SRC and RHR damages, attorneys' fees, and costs. ERT took nothing. The trial court subsequently entered findings of fact and conclusions of law. On appeal, appellant asserts thirteen issues.

## STANDING UNDER FRAUDULENT LIEN STATUTE

In its first issue, ERT asserts SRC does not have standing to pursue a claim under the fraudulent lien statute because SRC is not an "obligor or debtor." Although ERT did not raise this argument below, ERT asserts this issue is jurisdictional and, therefore, not waived.

The Fraudulent Lien Statute is found in Chapter 12 of the Texas Civil Practice & Remedies Code. Section 12.003 ("Cause of Action") provides: "The following persons may bring an action to . . . recover damages under this chapter . . . in the case of a fraudulent lien or claim against real or personal property or an interest in real or personal property, **the obligor or debtor**, or a person who owns an interest in the real or personal property." TEX. CIV. PRAC. & REM. CODE § 12.003(a)(8) (emphasis added).

In *Pike v. Tex. EMC Mgmt., LLC*, the Supreme Court of Texas determined, "[W]hether a party can prove the merits of its claim or satisfy the requirements of a particular statute does not affect the court's subject-matter jurisdiction." 610 S.W.3d 763, 777 (Tex. 2020). "[T]he question whether a plaintiff has established his right to go forward with [his] suit or satisfied the requisites of a particular statute pertains in reality to the right of the plaintiff to relief rather than to the

[subject-matter] jurisdiction of the court to afford it. Thus, a plaintiff does not lack standing in its proper, jurisdictional sense simply because he cannot prevail on the merits of his claim; he lacks standing [when] his claim of injury is too slight for a court to afford redress." *Id.* at 774 (internal quotations omitted) (alterations in original); *see also Tex. Bd. of Chiropractic Examiners v. Tex. Med. Ass'n*, 616 S.W.3d 558, 566–67 (Tex. 2021) ("The Board characterizes § 2001.038(a) as a 'statutory standing' provision. Constitutional standing is a prerequisite for subject matter jurisdiction. . . . But last Term in *Pike v. EMC Management, LLC*, we discouraged the use of the term standing to describe extra-constitutional restrictions on the right of a particular plaintiff to bring a particular lawsuit."). The statutory question of whether SRC is an "obligor or debtor" under Section 12.003(a)(8) is an extra-constitutional question and, therefore, not properly characterized as jurisdictional under *Pike*.

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the context. TEX. R. APP. P. 33.1(a)(1)(A). If a party fails to present the issue to the trial court, the error is not preserved and cannot be reviewed on appeal. *See Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991). Here, ERT did not raise the issue of whether SRC is an obligor or debtor in the trial court, and the issue is not jurisdictional. Therefore, it is not preserved for our review. *See id.* We overrule ERT's first issue.

### LEGAL AND FACTUAL SUFFICIENCY OF EVIDENCE

In its second, third, fourth, fifth, and tenth issues, ERT challenges the sufficiency of the evidence. We take each in turn.

### *Standard of Review*

We review sufficiency challenges to a trial court's findings of fact under the same standards that are used to review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

Where a party attacks the legal sufficiency of the evidence to support an adverse finding for which that party did not have the burden of proof, that party must show there is no evidence to support the adverse findings. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We view the evidence in the light most favorable to the finding, disregarding all contrary evidence that a reasonable fact-finder could have disbelieved. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). If there is more than a scintilla of evidence to support a finding, it must be upheld. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The trier of fact is the sole judge of the credibility of the witnesses and the weight given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

In a factual sufficiency review, we consider and weigh all the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). If a party attacks the factual sufficiency of the evidence supporting an adverse finding on an issue on which it did not have the burden of proof, that party must show the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.*

### Fraudulent Lien Claim

In its second issue, ERT asserts there is legally insufficient evidence that (1) ERT's lien was fraudulent; (2) ERT had knowledge that the lien was fraudulent; and (3) ERT intended the lien would cause financial injury to SRC or RHR.

ERT's lien stated an agreed rental rate of $31,850 per month, but there was sufficient evidence by which the trial court could find—and did find—the orally-agreed rental rate in October 2017 was $14,000 per month and ERT knew that the parties had not agreed to the higher rate at the time it filed the lien. ERT's lien also included over $94,000 in items not authorized by the lien statutes, including (1) food and lodging for ERT's employees when they came to Texas to repossess ERT's equipment; (2) fuel used in transporting repossessed equipment to North Dakota;

(3) labor costs for breaking down the repossessed equipment for transport back to North Dakota; (4) the cost to repair damage to a truck after it was repossessed; and (5) undefined miscellaneous items. *See* TEX. PROP. CODE §§ 53.023, 56.002.

The trial court found:

> Had ERT limited the lien to secure payment for authorized items *(i.e.,* lease payments for equipment used during rock-crushing activities) then despite the parties' disagreement over the monthly payment amounts, ERT's lien would have been in an amount between $35,000 ($14,000 per month for 2.5 months at [sic]) and $79,625 ($31,850 per month at 2.5 months). Even using ERT's alleged monthly payment amount, the $79,625 is less than the amount which [SRC and RHR] agreed to pay ERT during the 2-14-18 Starbucks meeting (whereat they offered to pay $80,000). But ERT intentionally filed a lien in the amount of $242,395.44 knowing this amount was something that [SRC and RHR] never could or would pay—and would create maximum pressure on [SRC and RHR] to forgive ERT's prior debts and would intimidate Wheatcraft/[SRC and RHR] to submit to its outrageous payment demands. By knowing of the invalidity and fraudulent nature of the lien amount at the time of filing the lien, ERT acted with intent to defraud.

The evidence and trial court's credibility assessments support a determination that ERT's lien was created in bad faith or with dishonesty, a lack of integrity, or moral turpitude—in other words, fraudulent. *See Nationstar Mortgage LLC v. Barefoot*, No. 14-19-00750-CV, 2021 WL 5001660, at *2 (Tex. App.—Houston [14th Dist.] Oct. 28, 2021, no pet.) (citing *Fraudulent Act*, BLACK'S LAW DICTIONARY (11th ed. 2019) (fraudulent act "involve[es] bad faith, dishonesty, a lack of integrity, or moral turpitude")). The trial court could have also ascertained ERT's knowledge and intent to cause injury from ERT's actions in its February 2018 visit to the Wheatcraft quarry; ERT's threats against Wheatcraft; the use of sequentially-numbered invoices apparently created to justify the existence of a lien; and ERT's inflation of the amounts included in the lien as potential leverage over pre-existing debt negotiations.

After reviewing the evidence and testimony at trial, we cannot say the trial court erred in determining that ERT's lien was fraudulent, that ERT had knowledge that the lien was fraudulent, or that ERT intended the lien would cause financial injury. We overrule ERT's second issue.

**Lost Profits—Causation**

In its third and fourth issues, ERT asserts there is legally insufficient evidence to support the trial court's award of lost profits because there is insufficient evidence the filing of the lien proximately caused financial injury to SRC. ERT complains over lost profits awarded both for the Century Asphalt project and the Wheatcraft project.

*Applicable Law*

Lost profits damages can be recovered only when both the fact and amount of damages is proved with reasonable certainty. *Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 859–60 (Tex. 2017). What constitutes reasonably certain evidence of lost profits is a fact intensive determination. *Id.* A party's bare assertion that a contract was lost does not establish lost profits with reasonable certainty. *Id.* Rather, the general rule is that recovery of lost profits as damages is allowed "where it is shown that a loss of profits is the natural and probable consequence of the act or omission complained of, and their amount is shown with sufficient certainty." *Id.* (quoting *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994)).

*Causation—Century Asphalt Project*

On appeal, ERT must show that no evidence supports the trial court's finding that, due to ERT's fraudulent lien filing, SRC was unable to work on the Century Asphalt project. The trial court found that Matt Hansen (an owner of SRC) credibly testified that ERT's premature repossession was a "challenge" to SRC but that ERT's fraudulent lien filing was the primary reason SRC could not timely mobilize to the Century Asphalt project. Heittola's testimony tracked Hansen's, and no evidence was presented to the contrary. Both Heittola and Hansen also testified

that, had ERT not inflated the amount of the lien, they could have had a much stronger possibility of figuring out a way to complete the Century Asphalt project. However, according to their testimony, ERT's inflated claim to nearly $250,000 proved too large of an obstacle to overcome. Heittola and Hansen's testimony supports the trial court's determination that SRC did not have the funds to mobilize to the Century Asphalt project because they were trapped by Wheatcraft. Further, the trial court could have concluded the lien resulted in Wheatcraft terminating its contract with SRC, which resulted in SRC losing profits that could have been used to mobilize to its next project.

After reviewing the evidence and testimony at trial, we cannot say the trial court erred in awarding lost profits from the Century Asphalt project on the basis that that ERT's lien proximately caused financial injury to SRC. We overrule ERT's third issue.

*Causation—Wheatcraft Project*

The trial court found, "[a]s a result of ERT's lien filing and financial threats to Wheatcraft, Wheatcraft refused to pay SRC for the crushing work it had already performed." It further found that Hansen "testified credibly that while ERT's premature repossession of the equipment was a challenge, ERT's fraudulent lien was the primary reason it could not continue working because it prevented SRC from receiving the remaining Wheatcraft profits. . . ."

ERT's pre-lien notices resulted in Wheatcraft being legally obliged to trap the funds it owed SRC upon service of the notice of ERT's claim. *See* TEX. PROP. CODE §§ 53.001 *et seq.*, 56.001 *et seq.* SRC was not paid what it was owed because of Wheatcraft's obligation to trap the funds.[2] Although Wheatcraft did not unequivocally testify that the lien was the sole reason SRC was terminated from the Wheatcraft project, the trial court could have concluded from the

---

[2] Notably, Wheatcraft ultimately paid the funds to ERT in settlement of all claims against it.

testimony presented at trial that Wheatcraft halted all work that SRC was performing for Wheatcraft because of ERT's threats and the lien.

After reviewing the evidence and testimony at trial, we cannot say the trial court erred in awarding lost profits from the Wheatcraft project on the basis that ERT's lien proximately caused financial injury to SRC. We overrule ERT's fourth issue.

**Amount of Damages**

In its fifth issue, ERT asserts there is legally and factually insufficient evidence to support the trial court's award of lost profits.

*Applicable Law*

Lost profits damages can be recovered only when both the fact and amount of damages is proved with reasonable certainty. *Horizon Health Corp.*, 520 S.W.3d at 859–60. Recovery for lost profits does not require that the loss be susceptible of exact calculation. *Id.* (quoting *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010)). However, the injured party must do more than show that it suffered some lost profits. *Id.* The amount of the loss must be shown by competent evidence with reasonable certainty. *Id.* What constitutes reasonably certain evidence of lost profits is a fact intensive determination. *Id.* As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Id.* Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates. *Id.*

*Amount of Damages—Century Asphalt Project*

Challenging the amount of lost profits pertaining to the Century Asphalt project, ERT asserts "SRC's only evidence is speculative and legally insufficient, because it is based entirely on Hansen's unsupported opinion testimony that he expected to earn 40% profit on the job. [Hansen]

did not testify as to how this estimation was calculated, as to what data it was based upon, or whether SRC had ever performed a job like the Century Asphalt project in the past."

Hansen testified that the Century Asphalt project was a $1.16 million project. In March 2018, Century Asphalt orally committed SRC to the project. Although SRC later signed a contract for the project, SRC was unable to commence the job for the reasons we have discussed. Hansen testified at trial that he expected profits of about 40% (about $440,000) from the $1.16 million job. He testified as to SRC's plan for the job and the equipment required to perform the job. Hansen's estimate was based on (1) having bid the job, (2) his familiarity with the requirements of the job, and (3) his knowledge as to SRC's finances and operations. Hansen offered Century Asphalt multiple options for performing the project and explained the costs, including: the project's payroll, permitting costs, capital costs, fuel, and other expenses. We cannot say that Hansen's calculation, based on this information, was speculative—rather, we believe Hansen's calculation was proved with reasonable certainty. We reject ERT's arguments to the contrary.

*Amount of Damages—Wheatcraft Project*

Challenging the amount of lost profit damages pertaining to the Wheatcraft project, ERT asserts, "There was no evidence to support $65,000 in lost profits on the Wheatcraft Quarry Project. Hansen did not testify as to how any lost profit was calculated or as to what data it would be based upon. . . . Further, there was insufficient evidence of the terms of any agreement between Wheatcraft and SRC upon which lost profits might be based." However, the $65,175 awarded by the trial court in lost profits from the Wheatcraft project was based on the amount of profits actually withheld by Wheatcraft and was, therefore, demonstrated by competent evidence calculated with reasonable certainty. We overrule ERT's fifth issue.

***Sufficiency of RHR's Damages***

In its tenth issue, ERT asserts the trial court erred "in awarding $250,000 in actual damages to RHR because there is insufficient evidence to support these damages and the great weight and preponderance of the evidence shows a portion of those damages were settled for $90,000." The $250,000 ERT complains over includes (1) $165,000 relating to pre-existing debt; and (2) $85,000 relating to damage to RHR's equipment.

*HCC Debt*

ERT first asserts the evidence at trial conclusively proved the parties agreed to settle the $160,000 debt for $90,000, and, therefore, the judgment should be reformed such that the obligation owed RHR for the HCC debt is the $90,000 settlement. We disagree.

Heittola's buyout agreement with HCC was introduced into evidence. Schedule 2 of the agreement reflects HCC transferred to Heittola ERT's accounts receivable in the amount of $235,207.50. Schedule 3 reflects HCC transferred to Heittola ERT's accounts payable in the amount of $70,204.98. Crediting ERT's payables against the receivables, the agreement evidences $165,002.52 in debt owed by ERT to Heittola. ERT's debt was subsequently transferred by Heittola to RHR by another agreement. Therefore, there was some evidence before the trial court that ERT owed RHR $165,000.

Heittola testified that during negotiations with HCC, he reached out to Gokey (ERT's principal) to determine whether ERT was willing to settle the $165,000, and that during those discussions, ERT did not dispute owing the $165,000. During these settlement discussions, ERT offered to pay $90,000 in full satisfaction of the debt, and RHR agreed to accept it. However, by the time of trial—four years later—ERT had not paid any of the $90,000. Gokey testified that ERT did not pay because the $90,000 was agreed to as an offset against RHR's rental costs for the equipment. On the other hand, Heittola adamantly denied that there was any agreement to credit

the $90,000 as an offset to equipment rental, and the lien does not reflect any credit of $90,000. Faced with conflicting testimony on this point, the trial court was entitled to resolve the fact issue based on its assessment of the witnesses' credibility. *See Wise v. Conklin*, No. 01-13-00840-CV, 2015 WL 1778612, at *3 (Tex. App.—Houston [1st Dist.] Apr. 16, 2015, no pet.) ("In a bench trial, the trial court is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary.").

Weighing the credibility of Heittola and Gokey's testimony on this point, the trial court determined that ERT cannot enforce the oral settlement for $90,000 on the $165,000 debt because—in failing to pay anything within four years of the agreement—ERT failed to perform within a reasonable timeframe. We cannot say the trial court's finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. We overrule ERT's complaints to the contrary.

*Equipment Damage*

ERT next asserts the trial court erred in awarding $85,000 in damages to RHR's equipment. According to ERT, there is no evidence that ERT damaged RHR's equipment and no evidence of the equipment's value. However, Heittola testified (1) the equipment was in Gokey's possession when he retrieved it in 2021; (2) ERT was not paying for the equipment; (3) the equipment had been broken for at least two years; (4) the equipment was broken from operator error; (5) although Gokey blamed the damage on "faulty welding or whatever on the conveyer," Heittola determined the main axles were twisted from the wheels being stuck in sand; (6) the value of the stacker was $75,000; and (7) the value of additional damages was approximately $10,000. Given these facts, the trial court could have believed ERT damaged the equipment when it was in its possession between 2017 and 2021. We cannot say the trial court's finding is so contrary to the overwhelming

weight of the evidence as to be clearly wrong and manifestly unjust. We overrule ERT's tenth issue.

## RHR's Damage Calculation

In its eighth issue, ERT asserts the trial court erred in awarding $270,003 to RHR because the amount in the findings of fact do not add up to this amount. ERT's complaint appears to be based on a clerical error in the findings of fact and conclusions of law.[3] The trial court's findings of fact and conclusions of law provide:

> RHR has suffered the following damages . . .
>
> | | |
> |---|---:|
> | Principal: | $165,000 |
> | Pre-Judgement Interest: | $20,003 |
> | Replacement costs for a Kolberg stacker damaged by ERT: | $75,000 |
> | Damage to other items of equipment recovered from ERT: | $10,000 |
> | Total RHR Damages: | **$260,003.00** |

Although the "Total RHR Damages" line states a total of $260,003, the mathematically-correct total is $270,003. Thus, the final judgment correctly states the total damages itemized in the findings of fact and conclusions of law notwithstanding the clerical error contained in the findings of fact and conclusions of law. Because the final judgment correctly reflected RHR's damages, there is nothing for this court to reform. We overrule ERT's eighth issue.

## Prejudgment Interest

In its ninth issue, ERT asserts the trial court erred in awarding RHR prejudgment interest. The entirety of ERT's briefing on this issue states: "The judgment included an award for $20,003 which was designated as prejudgment interest in the Findings of Fact and Conclusions of law. The trial court did not award prejudgment interest in its judgment (to either RHR or SHR) and judgment for $20,003 should be reversed and judgment rendered that RHR take nothing for prejudgment

---

[3] Whether an alleged error constitutes a clerical error is a question of law we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627,631 (Tex. 2008). A mathematical error in the damages constitutes a clerical error. *Travelers Cos. v. Wolfe*, 838 S.W.2d 708, 710 n.2 (Tex. App.—Amarillo 1992, no writ).

interest. If the judgment amount is for interest on the [HCC] Debt, there is insufficient evidence to show how the interest was calculated or when it began to accrue."

ERT cites no applicable authority in its brief, does not apply any authority to the facts of this case, and does not otherwise "present sufficient argument [or] provide basis to support a conclusion that the trial court erred." *Barrera v. Bexar Cnty. Hosp. Dist.*, No. 04-19-00893-CV, 2020 WL 6928394, at *4 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (quoting *Lowry v. Tarbox*, 537 S.W.3d 599, 619–20 (Tex. App.—San Antonio 2017, pet. denied)). As a result, we overrule ERT's ninth issue as inadequately briefed and, therefore, waived.

## QUANTUM MERUIT

In its twelfth issue, ERT asserts the trial court erred in failing to award ERT damages in quantum meruit. Quantum meruit is an equitable theory of recovery based on an implied contract. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985).

On appeal, ERT argues it was entitled to recovery under a quantum meruit theory because (1) it had an implied construction contract enabling it to be paid for partial performance and (2) the Wheatcraft settlement payment does not preclude a finding that ERT still suffered unpaid rental damages. However, the trial court denied quantum meruit relief on additional grounds.

"When a separate and independent ground that supports a judgment is not challenged on appeal, [we] must affirm." *Harris v. Gen. Motors Corp.*, 924 S.W.2d 187, 188 (Tex. App.—San Antonio 1996, writ denied); *Fitzsimmons v. Killeen Indep. Sch. Dist.*, No. 03-19-00535-CV, 2020 WL 4726697, at *2 (Tex. App.—Austin Aug. 14, 2020, pet. denied) (mem. op.) ("If an appellant does not challenge every ground that could have independently supported the trial court's ruling, 'we must accept the validity of the unchallenged ground and affirm the adverse ruling.'").

On appeal, ERT failed to address three independent grounds supporting the trial court's denial of quantum meruit relief. First, the trial court found ERT's unclean hands barred equitable

relief. *See Cantu v. Guerra & Moore, LLP*, 448 S.W.3d 485, 496 (Tex. App.—San Antonio 2014, pet. denied) ("Unclean hands is an affirmative defense that may bar a party with unclean hands from obtaining equitable relief."). Second, the trial court found that ERT cannot recover because it failed to mitigate its damages. Third, the trial court found ERT cannot recover because ERT prevented appellees from performing in what it describes as an impossibility defense. Because ERT failed to address these grounds on appeal, we must affirm the judgment on those grounds. *See Harris*, 924 S.W.2d at 188; *Bechtel Corp. v. City of San Antonio*, No. 04-04-00910-CV, 2006 WL 228689, at *4 (Tex. App.—San Antonio Feb. 1, 2006, no pet.) (mem. op.).

## COSTS

In its sixth and eleventh issues, ERT asserts the trial court erred in awarding costs to RHR and SRC. The entirety of ERT's briefing on these issues states: "The trial court erred by awarding SRC costs because the judgment states that costs are to be borne by the party incurring same. 'IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all taxable court costs are assessed against the party incurring same.' (Judgment, page 3 of 3)." Notably, in another portion, the judgment also specifically awards costs to RHR and SRC.

ERT cites no applicable authority in its brief, does not apply any authority to the facts of this case, and does not otherwise "present sufficient argument [or] provide basis to support a conclusion that the trial court erred." *Barrera*, 2020 WL 6928394, at *4. As a result, we overrule ERT's sixth and eleventh issues as inadequately briefed and, therefore, waived.

## ATTORNEY'S FEES

In its seventh issue, ERT asserts the trial court erred by awarding attorney's fees to SRC based upon the fraudulent lien statute because there is no or insufficient evidence that SRC is entitled to recover under that statute, and therefore SRC does not have a statutory basis for recovery

of the fees. Having determined SRC had a valid statutory basis for seeking attorney's fees, we overrule ERT's seventh issue.

In its thirteenth issue, ERT asserts it is entitled to recover attorney's fees on its quantum meruit claim should this court determine it was entitled to recover under a quantum meruit theory. Because we have determined ERT is not entitled to recover under a quantum meruit theory, we overrule ERT's thirteenth issue.

### CONCLUSION

Having overruled each of ERT's issues on appeal, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice