[1] Writ of error denied by supreme court.
 Statement of Case.
This was a suit by George T. Fielding to recover of D. F. White, J. D. Bell, A. J. Sewall, and R. L. Ball an undivided one-half interest in 200 acres of land described in plaintiff's petition; plaintiff alleging that he and D. F. White owned the property in common, each having purchased an undivided one-half interest therein from W. J. Allen (common source), and each had assumed to pay one-half of $1,100 secured by deed of trust on the land made by Allen prior to their purchase, Plaintiff alleges that at a sale under that deed of trust, which seems to have been for default in the interest payment, D. F. White purchased the land for $1,100, and on same day, by previous arrangement, borrowed the money to pay his bid, and secured the same by deed of trust of same date on the entire tract, and on same day sold to Bell the entire tract for recited consideration of $4,500, a part of which was the assumption by Bell of the deed of trust that day placed on the land by White to secure $1,320. Plaintiff alleges that Bell had actual and constructive notice of plaintiff's title and rights. Bell sold to Sewall: consideration, the assumption by Sewall of the mortgage debt. $1,320, due in 1897, and two notes, — one for $880, due January 1, 1894, and one for $1,000, due January 1, 1895, Plaintiff's deed from Allen was of record. Plaintiff asked for title, partition, and rent, and in the alternative for judgment for $2,500, his one-half the value of the land. Defendants answered by demurrer, denial, plea of not guilty, and plea of innocent purchaser for valuable consideration. Trial before the court, and judgment for defendants.
 Conclusions of Fact.
We find the following as the facts: W. J. Allen is common source of title. In May, 1887. Allen, by deed, conveyed an undivided half of the land in controversy to D. F. White, for a consideration of $3,000, and the assumption by White of one-half of the amount, principal and interest. Due and to become due by Allen to the Equitable Mortgage Company of Dallas, Tex., upon a note to said company executed by Allen for $1,110, secured by mortgage on said land, on February 1, 1887. In January, 1801, Allen conveyed to appellant, Fielding, the remaining undivided half of the land in controversy, for a consideration of $2,400, and the assumption by Fielding of the payment of one-half of the amouut due by Allen to said mortgage company, which was secured by the lien aforesaid. The land in controversy is inclosed, with a house on it, and about 190 acres in *Page 1055 
cultivation. The rent for the years 1892 and 1893 was worth $1 per acre, and for 1894 worth $2.50 per acre. In default of payment of interest, the trustee in the deed of trust executed by Allen to the mortgage company on April 5, 1892, sold the land in controversy to D. F. White, and upon that day executed to said White a conveyance therefor, with a recited consideration of $1,175. April 5, 1892, White, by deed, conveyed the 200 acres in controversy to J. D. Bell; and in 1893 Bell, by deed, conveyed the land to A. J. Sewall. The deed to Fielding from Allen was of record when the land was sold at trustee's sale, and also when purchased by Bell and Sewall. When White purchased the land at trustee's sale, he executed a deed of trust on the land to Norma Thompson to secure a none for $1,320, and when Sewall purchased he agreed in his deed to assume payment of this note and vendor's lien retained by Bell. The consideration paid by Bell for the land was $2,000 due him by White, and $150 in cash, and he agreed to pay the deed of trust executed by White to Thompson for $1,320. According to the evidence of White, and in deference to the judgment of the court, — which is in accord with his testimony, although in important particulars he is contradicted by Fielding, — we find that at the time Fielding purchased, and after, there was no understanding or agreement between White and Fielding about or concerning the interest of either party in said lands, and about their title to same, or the payment of the mortgage debt assumed by each to the mortgage company, or concerning the possession of the land or the use thereof, or concerning the purchase thereof by White at the trustee's sale, and that he purchased said land at that sale for his own exclusive use and benefit. We also find that White did not have the exclusive possession of said land, and up to the time that Allen sold to Fielding he (Allen) had possession of it. After that time William Oglesby had charge of it for White, and he says that he did not know who had possession or charge of the other interest. Before White purchased at trustee's sale, there was an understanding between him and Bell that Bell would purchase the land from him when he acquired title from trustee. Sewall had no actual notice of Fielding's interest in the land until about the time this suit was brought.
 Opinion.
We rest the disposition of this case upon the ruling that under the facts the relation existing between Fielding and White did not create between them such a fiduciary or trust relation as exists between tenants in common when holding under the same conveyance, or when in possession recognizing the joint or common right of each. If the facts had shown some understanding between the co-owners with reference to the duties of each to the other, or of some agreement with reference to the interest of each either as to title or possession, or as to the satisfaction of the outstanding mortgage, and the evidence of these facts had been of such a character as would create a trust relation between them, or which would imply reciprocal obligations resting upon each to observe the rights of the other in the common property, then the ruling would be different, and we would hold that the act of White in purchasing the property under sale of the outstanding mortgage would inure to the benefit of Fielding, subject to the charge of half of the amount expended by White in acquiring that title. But the facts do not show such a state of things, and we must, to be in accord with the ruling made in the cases of Roberts v. Thorn, 25 Tex. 735; Rippetoe v. Dwyer, 49 Tex. 505; Id., 72 Tex. 534, 10 S. W. 668; and McFarlin v. Leaman (Tex.Civ.App.) 29 S. W. 44, — hold that White acquired the outstanding title or incumbrance, free of any right or claim of appellant therein. The ruling made in those cases is decisive of the question. The doctrine there announced has been before the supreme court on three different occasions, and ruled upon at each term, when the court was comprised of different judges. Tracing the history of the question in this state back to this source, with the recognition It has since received by our highest court, leads to the conclusion that this doctrine thus announced should he held to establish a rule of property, which doubtless has frequently been acted upon, and which at this late day it would be contrary to policy and justice to overturn. In the opinion of the writer, if the question were an open one, I would be inclined to rule differently, and in accord with what I conceive to be the decided weight of authority. The unity of possession, or the right of joint possession, was the principal factor that created the relationship of tenants in common at common law. Their rights were acquired by several and distinct titles, or by the same title but at different periods; and the grand incident of such estates was the unity of possession, or the present right of possession, coextensive with the entire estate. And in my view of the law, when such relationship is once ascertained, or such estates are found to exist, eo instante there springs into existence a reciprocal and mutual obligation and duty resting upon each co-owner, in dealing with the common estate, to observe the right of each other, and to abstain from acts in which benefit and profit may result to one to the injury of the other, although there be an absence of facts tending to show special circumstances creating trust relationship. This seems to be in accord with the decided weight of authority upon this question. There is nothing in article 1655, Rev. St., that was intended to operate upon such estates, but the sole purpose of this law was to destroy the right of survivorship as it existed at common law in estates in joint tenancy, and to cast descent *Page 1056 
as existed in other estates. Tenancy in common at common law was created differently, and was a distinct estate from that of joint tenancy; and, while the purpose of article 1655 was to destroy the latter estates, it cannot be held that the purpose was to affect the former, unless we adopt a construction that would include it within the terms of this article by a process of induction which, in view of the plain language of the statutes, would not be permissible. For the reason stated the judgment below is affirmed. Affirmed.
 *Page 771