

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-20-00143-CV

**RANCHO VIEJO CATTLE COMPANY, LTD.** and Rancho Viejo Waste Management, LLC,
Appellants

v.

**ANB CATTLE COMPANY, LTD.**,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2014CVQ-000162-D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: September 29, 2021

AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND
REMANDED IN PART

This case stems from competing motions for summary judgment concerning the authority

to build certain improvements on the surface estates of Surveys 112 and 2366 in Webb County,

Texas (the "disputed tracts").  Appellants Rancho Viejo Cattle Company, Ltd. ("RVCC") and

Rancho Viejo Waste Management, LLC ("RVWM") (collectively "Rancho Viejo") challenge the

trial court's declaratory judgment in favor of appellee, ANB Cattle Company, Ltd. ("ANB"),

regarding the parties' respective rights to the disputed tracts.  The trial court declared Rancho Viejo

has no legal authority to use the disputed tracts as solid waste landfill facilities without the

authorization and consent of ANB because: (1) ANB owned the disputed tracts as a cotenant with Rancho Viejo; (2) the use and possession of the disputed tracts is limited to hunting and grazing; and (3) Rancho Viejo has a fiduciary obligation not to impair, inhibit, or destroy ANB's ability to obtain benefits from the surface estate of the disputed tracts in the development of the underlying mineral estates. We determine whether: (1) ANB owns the disputed tracts as a cotenant; (2) a restrictive covenant exists that limits the use of the disputed tracts to hunting and grazing only; (3) Rancho Viejo is a fiduciary to ANB for matters that do not involve mineral operations; and (4) the trial court erred in its declaration regarding Rancho Viejo's legal authority to use the disputed tracts as solid waste landfill facilities without the authorization and consent of ANB. We affirm in part, reverse and render in part, and reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

The surface estate of the Yugo Ranch was wholly owned by C.Y. Benavides, Sr. ("C.Y. Sr.") and consisted of approximately 22,000 acres in Webb County, Texas. In 1969—and over the next twenty years—C.Y. Sr. began conveying the Yugo Ranch to his two sons, Carlos Y. Benavides, Jr. ("Carlos") and Arturo N. Benavides ("Arturo").

Carlos and Arturo ultimately held title to their portions of the divided Yugo Ranch through entities that each brother owned, RVCC and ANB, respectively. Eventually, the entire surface estate of the 22,000-acre Yugo Ranch was divided into two tracts: the northern half being owned by ANB—the ANB Ranch—and the southern half being owned by RVCC—the RVCC Ranch. ANB is wholly owned by members of Arturo's family, and RVCC is wholly owned by members of Carlos's family.

The Benavides family had a practice of retaining shared interests in mineral rights regardless of how ownership of the surface estate was divided. Therefore, most of the mineral

estate underlying the ANB Ranch and RVCC Ranch was either owned by the Benavides Family Mineral Trust or owned jointly by Carlos and Arturo. However, portions of the ANB Ranch and the RVCC Ranch are "mineral classified lands." Mineral classified land is property that was owned by the State of Texas ("the State"), and the surface was later conveyed to the public while the mineral estate was reserved by the State. *See* James D. Shields, Comment, *Leasing Lands Subject to the Tex. Relinquishment Act*, 13 St. Mary's L.J. 868, 871 (1982) ("Mineral rights were not retained by the [S]tate in any lands sold to the public except when the land had been classified as mineral land at the time of sale, or when the land was sold with an express reservation of the minerals by the [S]tate.").

Carlos and Arturo could not share the minerals underlying the mineral classified lands because the minerals are owned by the State. Under the Relinquishment Act of 1919, however, the owner of the surface estate still derives benefits from the minerals developed on mineral classified lands even though the State owns those minerals. *See id.* at 870 ("In consideration for acting as the [S]tate's agent, the owner [of the soil] is entitled to [surface-use payments in an amount equal to] 'an undivided fifteen-sixteenths of all oil and gas which has been undeveloped.'" (quoting TEX. NAT. RES. CODE ANN. § 52.171)). "The Act provides that 'the owner of the soil' is the [S]tate's agent authorized to lease oil and gas under any surveyed and unsurveyed public free school and asylum lands sold with a mineral classification or mineral reservation." Shields, *supra*, at 870. The lessee of the mineral rights would remit the surface-use payments directly to the surface owner. TEX. NAT. RES. CODE ANN. § 52.172. "Although the surface owner has no title to the oil and gas, he benefits as if he were fee owner." Shields, *supra*, at 884.

Carlos and Arturo had a mutual desire to share in the surface-use payments derived from the production of the State's minerals underlying the mineral classified lands on the ANB Ranch and the RVCC Ranch. However, one must be the surface owner of the mineral classified lands in

order to receive the surface use payments. Thus, ANB had to have an ownership interest in the surface estate of the mineral classified lands on the RVCC Ranch to be entitled to surface-use payments on those tracts. Similarly, RVCC had to have an ownership interest in the surface estate of the mineral classified lands on the ANB Ranch to be entitled to surface-use payments on those tracts. Therefore, in 1990, the parties decided to cross-convey undivided interests of all mineral classified lands on their respective ranches ("the 1990 Cross-Conveyance"). The disputed tracts in this case—although originally wholly owned by RVCC—were mineral classified lands that were subject to the parties' 1990 Cross-Conveyance.

In 1998, ANB and RVCC executed a stipulation ("the 1998 Stipulation") to amend and clarify their respective property holdings of the mineral classified lands that were cross-conveyed in the 1990 Cross-Conveyance. Among other things, the 1998 Stipulation created additional duties, allocations, and responsibilities between the parties "in connection with" oil, gas, and mineral operations on mineral classified lands. The underlying lawsuit centers around the rights and obligations conferred to the parties under the 1990 Cross-Conveyance and the 1998 Stipulation.

In 2011, RVCC conveyed 1,100 acres of the RVCC Ranch to RVWM.[1] The disputed tracts were at least partially included in the 1,100-acre conveyance.

RVWM subsequently filed for a permit to construct a municipal solid waste landfill and recycling center (the "Landfill") with the Texas Commission on Environmental Quality. RVWM concedes its original permit application included plans to construct two landfill disposal units on the disputed tracts. The Texas General Land Office ("GLO") and ANB complained that the proposed landfill disposal units would prevent the development of minerals on the disputed tracts.

---

[1] RVCC and RVWM are both wholly owned by Carlos's family and are each an appellant in this appeal.

In response, RVWM amended its application to exclude the disputed tracts from the Landfill. Although the Landfill was no longer within the boundaries of the disputed tracts, RVWM, in its application, proposed to use the disputed tracts for floodwater management to prevent floodwater from inundating the Landfill. Specifically, RVWM committed to building a berm across the disputed tract to change the 100-year floodplain and divert floodwater away from the Landfill. RVWM also proposed to build groundwater monitoring wells. RVWM asked the GLO if the amended application would prevent the development of the State's minerals on the disputed tracts. The GLO responded that the planned surface use of Survey 112 should not adversely affect the production and development of minerals.[2] The GLO did not file an objection to the amended application.

While ANB contested RVWM's application at the State Office of Administrative Hearings, ANB simultaneously filed the underlying suit against Rancho Viejo seeking judicial declarations regarding its rights to the disputed tracts under the 1990 Cross-Conveyance and the 1998 Stipulation. Specifically, ANB requested the trial court render declaratory judgment that "RVCC and RVWM are prohibited from including [the disputed tracts] in the proposed municipal solid waste facility, and further that RVCC and RVWM are prohibited from constructing on [the disputed tract] any structures or appurtenances associated with such municipal waste facility, including, but not limited to, tank dams, floodwater retention ponds and reservoirs and drainage channels." In its petition, ANB claims it is entitled to the declaration because Rancho Viejo's proposed use of the disputed tracts is a violation of: (1) ANB's property rights as a cotenant of the disputed tracts; (2) restrictive covenants in the 1990 Cross-Conveyance; and (3) Rancho Viejo's fiduciary duty to ANB.

---

[2] Even though RVWM requested the GLO's input on Survey 112 and Survey 2366, the GLO did not mention Survey 2366 in its response.

Rancho Viejo filed an answer and counterclaim seeking a declaratory judgment that: (1) ANB does not own the disputed tracts as a co-tenant; (2) the exclusive use and possession of the disputed tracts is not restricted to hunting and grazing only; (3) Rancho Viejo does not owe ANB a fiduciary duty for matters other than mineral operations on the disputed tracts and have no duty to account to ANB for proceeds that are not derived from mineral operations on the disputed tracts; and (4) Rancho Viejo has the exclusive right to use, possess, and enjoy the surface of the disputed tracts.

The parties filed competing motions for summary judgment on their respective requests for declaratory relief. In its motion for summary judgment, ANB requested the trial court issue a declaration that Rancho Viejo has no legal authority to use the disputed tracts as the site for solid waste landfill facilities without the prior authorization and consent of ANB and the GLO. ANB's request was based on arguments that ANB owns the disputed tracts as a cotenant and Rancho Viejo's proposed use of the disputed tracts: (1) would be a violation of the purported covenants restricting the use of the disputed tracts to hunting and grazing; (2) would violate ANB's legal rights in the disputed property[3] and be a violation of Rancho Viejo's fiduciary duty to ANB by preventing ANB from receiving potential benefits from the development of the underlying mineral estate; (3) would subject ANB to significant, potential environmental and property tax liability; and (4) requires consent from the GLO as owner of the underlying mineral estate.[4]

Rancho Viejo, in its traditional motion for summary judgment, requested the trial court issue a declaration that: (1) ANB does not own the surface estate of the disputed tracts as a

[3] In its summary judgment motion, ANB argued: "Besides violating the restrictive covenant, using the surface of [the disputed tracts] as the site of highly regulated solid waste landfill facilities would materially and adversely transform the character of those Mineral Classified Lands and deprive ANB of the contemplated benefits arising from the use of the surface estates in connection with the development of the mineral estates."

[4] On appeal, ANB abandoned its "potential environmental and property tax liability" and "GLO consent" arguments, and we do not consider them here. *See Cantu v. Guerra & Moore, LLP*, 448 S.W.3d 485, 489 n.3 (Tex. App.—San Antonio 2014, pet. denied); *see also Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

cotenant; (2) the 1990 Cross-Conveyance did not contain restrictive covenants restricting Rancho Viejo's use of the surface estate to hunting and grazing only; and (3) ANB's affirmative defenses of estoppel by deed, estoppel by contract, and section 23.004 of the Texas Property Code do not prohibit Rancho Viejo's intended use of the disputed tracts.[5] The trial court granted ANB's motion for summary judgment and denied Rancho Viejo's motion for summary judgment.

The trial court's judgment includes the following declarations:

1. [ANB] is a cotenant in the surface estates of [the disputed tracts];

2. [Rancho Viejo has] no legal authority to use [the disputed tracts] as sites for solid waste landfill facilities without [ANB]'s authorization and consent;

3. [Rancho Viejo's] exclusive use and possession of the surface estates of [the disputed tracts] is limited to hunting and grazing purposes; and

4. As fiduciaries of [ANB], [Rancho Viejo has] no legal authority to impair, inhibit, or destroy [ANB]'s ability to obtain its share of the contemplated benefits from the surface use of [the disputed tracts] in the development of the underlying mineral estates[.]

On appeal, Rancho Viejo argues the trial court erred in granting ANB's motion for summary judgment and denying Rancho Viejo's motion for summary judgment. Specifically, Rancho Viejo argues ANB did not meet its summary judgment burden to prove, as a matter of law, that Rancho Viejo has no legal authority to use the disputed tracts as sites for solid waste landfill facilities without the authorization and consent of ANB.[6] As sub-issues, Rancho Viejo challenges declarations one, three, and four, and argues: (1) ANB is not a cotenant in the disputed tracts; (2) Rancho Viejo's possession and use of the disputed tracts is not limited to hunting and grazing purposes; and (3) Rancho Viejo owes ANB a fiduciary duty only for surface use of the disputed tracts in connection with oil, gas, and other mineral operations.

---

[5] On appeal, Rancho Viejo abandoned its "affirmative defense" arguments, and we do not consider them here. *See Cantu*, 448 S.W.3d at 489 n.3; *see also Wolf*, 44 S.W.3d at 566.

[6] It appears that the trial court's second declaration regarding Rancho Viejo's legal authority to build solid waste landfill facilities is based on its first, third, and fourth declarations.

**STANDARD OF REVIEW**

We review a trial court's ruling on a summary judgment motion de novo. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). To prevail on a traditional summary judgment motion, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). In reviewing a trial court's summary judgment ruling, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Knott*, 128 S.W.3d at 215.

When competing summary judgment motions are filed, each movant has the burden of establishing its entitlement to judgment as a matter of law. *Tarr*, 556 S.W.3d at 278. When both parties move for summary judgment and the trial court grants one party's motion for summary judgment—while denying the other party's motion for summary judgment—the unsuccessful party may appeal both the grant of the prevailing party's motion and the denial of its own motion. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). Typically, in such a case, a reviewing court should review both parties' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

**DISCUSSION**

We address each of Rancho Viejo's sub-issues and determine whether the trial court erred in declarations one, three, and four. Then, we address whether ANB established, as a matter of law, that Rancho Viejo has no legal authority to use the disputed tracts as sites for solid waste landfill facilities without the authorization and consent of ANB.

- 8 -

**SUB-ISSUE 1(A): COTENANCY**

Rancho Viejo argues it retained the rights of possession and use of the disputed tracts in the 1990 Cross-Conveyance. Therefore, Rancho Viejo argues, ANB is not a cotenant in the disputed tracts because it never took possession of the disputed tracts and, consequently, never obtained all the rights associated with a fee simple owner. ANB argues that Rancho Viejo conveyed an undivided one-half fee simple interest in the disputed tracts, and ANB simultaneously contracted the exclusive use and possession of the disputed tracts back to Rancho Viejo.

*(a) Relevant Portions of the 1990 Cross-Conveyance*

Under the 1990 Cross-Conveyance, Rancho Viejo and ANB conveyed an "undivided one-half interest in [all mineral classified lands] lying within the . . . Yugo Ranch . . . [to] be owned in fee simple by Rancho Viejo Cattle Company, Ltd., as to an undivided one-half (1/2) interest and by ANB Cattle Company, Ltd., as to an undivided one-half (1/2) interest."

The 1990 Cross-Conveyance further clarified:

RANCHO VIEJO CATTLE COMPANY, LTD. . . . and ANB CATTLE COMPANY, LTD. . . . do hereby cross-convey an undivided one-half interest in the [mineral classified lands] . . . so that all [those] lands . . . lying within the Pescadito or Yugo Ranch . . . will be owned in fee simple by Rancho Viejo Cattle Company, Ltd., as to an undivided one-half (1/2) interest and by ANB Cattle Company, Ltd., as to an undivided one-half (1/2) interest.

Further down, the 1990 Cross-Conveyance reiterated:

RANCHO VIEJO CATTLE COMPANY, LTD. . . . does hereby GRANT, SELL, ASSIGN, and CROSS-CONVEY unto ANB CATTLE COMPANY, LTD., an undivided one-half (1/2) interest in any part of each of those [mineral classified lands] located within the above described Pescadito or Yugo Ranch . . . , the fee title to which now appears of record as now owned entirely by Rancho Viejo Cattle Company, Ltd. . . . .

Under this granting clause, the disputed tracts would now be jointly owned by Rancho Viejo and ANB in fee simple with each holding an undivided one-half fee simple interest in the

property. ANB argues this establishes, as a matter of law, that ANB owns the disputed tracts as cotenants.

Rancho Viejo disagrees. Rancho Viejo contends ANB has a non-possessory, non-usufructuary[7] interest in the disputed tracts because the Cross-Conveyance restricts ANB's right to possess and use the disputed tracts. Essentially, Rancho Viejo argues RVCC conveyed the right to dispose the disputed tracts but reserved the right to possess and use the disputed tracts. The portion of the 1990 Cross-Conveyance Rancho Viejo cites to support its argument reads:

> This conveyance is made expressly subject to . . . the agreement of the parties that the Limited Partnership [which was previously the exclusive owner of the particular mineral classified land] shall remain in exclusive possession of said lands and shall have the exclusive right to continue to occupy all portions of any of such surveys . . . for hunting and grazing . . . .

*(b) Applicable Law*

Property as a 'bundle of rights' is the right to use, posses, and dispose of the object or interest. *United States v. Gen. Motors Corp.*, 323 U.S. 373, 377–78 (1945). "Some of the key rights in American jurisprudence that make up the bundle of property rights include the rights to possess, use, transfer and exclude others." *See Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 383 (Tex. 2012). "Invoking illustrations propounded in first year property law, we liken the property here at issue, that is, the legal relationship[] created by the [1990 Cross-Conveyance], to a bundle of sticks." *Day v. Day*, 896 S.W.2d 373, 376 (Tex. App.—Amarillo 1995, no writ). Fee ownership is the right to possess the entire bundle of sticks. *Id.*; *see also Gen. Motors Corp.*, 323 U.S. at 377–78 (holding a fee simple is the interest comprising the entire group of rights—the right to use, possess, and dispose—associated with the property).

---

[7] A "usufructuary" is "a person who has the right to the benefits of another's property[.]" *Usufructuary*, BLACK'S LAW DICTIONARY (11th ed. 2019).

"A cotenancy is formed when two or more persons share the unity of exclusive use and possession in property held in common." *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991). Unity of possession in the property can be achieved through a party's *right* of possession. *Fielding v. White*, 32 S.W. 1054, 1055 (Tex. App.—Austin 1895, writ ref'd). "Generally, when more than one individual jointly owns a property, the relationship between the owners is a 'joint tenancy' or 'cotenancy.'" *Rife v. Kerr*, 513 S.W.3d 601, 612–13 (Tex. App.— San Antonio 2016, pet. denied); *Wagenschein v. Ehlinger*, 581 S.W.3d 851, 857 (Tex. App.— Corpus Christi–Edinburg 2019, pet. denied) ("Texas recognizes two types of co-tenancies which may be deeded: a tenancy in common and a joint tenancy.").

*(c) Analysis*

Here, Rancho Viejo conveyed "an undivided one-half interest in the [disputed tracts] . . . in fee simple" to ANB in the 1990 Cross-Conveyance. Because a fee simple interest includes the entire "bundle of sticks," the 1990 Cross-Conveyance conferred upon ANB the right to use, possess, and dispose the disputed tracts. *See Day*, 896 S.W.2d at 376. Thus, ANB obtained the right to use and possess the disputed tracts upon the execution of the 1990 Cross-Conveyance. This right to use and possess the disputed tracts was sufficient to create a cotenancy between Rancho Viejo and ANB for the surface estate of the disputed tracts. *See Laster*, 826 S.W.2d at 129. Contrary to Rancho Viejo's argument, it is irrelevant that ANB did not ever actually have or take possession of the disputed tracts because ANB only needed a *right* to possession in order to satisfy the unity of possession necessary to create a cotenancy. *See Fielding*, 32 S.W. at 1055; *see also* 2 TIFFANY REAL PROP. § 426 (3d ed. 2020) ("The unity of possession means unity of right of possession and not possession in fact."); *Cline v. Henry*, 239 S.W.2d 205, 208 (Tex. App.—Dallas 1951, writ ref'd n.r.e.) ("An essential element of cotenancy is the present right of possession.").

Therefore, ANB and Rancho Viejo became cotenants upon the execution of the 1990 Cross-Conveyance.

Although ANB, as a cotenant, had the right to possess and use the disputed tracts, the parties contractually agreed to give Rancho Viejo exclusive use and possession of the disputed tracts in the 1990 Cross-Conveyance. *See Gulf, C. & S. F. Ry. Co. v. Wheat*, 3 S.W. 455, 457 (Tex. 1887) (indicating an agreement where one cotenant "is permitted to have the exclusive use and possession of a part of the land which they together own" is allowed under the law). However, this arrangement did not change the nature of the tenancy. *See First Baptist Church of Fort Worth v. Baptist Bible Seminary*, 347 S.W.2d 587, 591 (Tex. 1961) ("Words in a deed showing the purpose of the grant and the use to which the property is to be put do not change the effect of the conveyance or limit the grant.").

Moreover, Rancho Viejo has not pointed us to any authority showing the severability of rights associated with a surface estate. Rancho Viejo claims ANB only holds an interest in the disputed tracts that is sufficient to entitle ANB to surface-use payments under the Relinquishment Act. However, no such tenancy exists in Texas. *See Wagenschein*, 581 S.W.3d at 857 ("Texas recognizes two types of co-tenancies which may be deeded: a tenancy in common and a joint tenancy."). While we have found ample authority supporting the severability of rights associated with mineral estates, we have not found any authority supporting the severability of rights associated with surface estates. *Cf. Hysaw v. Dawkins*, 483 S.W.3d 1, 9 (Tex. 2016) ("The mineral estate is comprised of five severable rights . . . ."); *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995); *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). As such, Rancho Viejo's position—that it conveyed to ANB a tenancy where the rights to possession and use were severed and reserved—is not supported by the law and we decline to create new law here to support the severability of surface estate rights.

Therefore, we hold the trial court did not err in its declaration that ANB is a cotenant in the disputed tracts.

## SUB-ISSUE 1(B): RESTRICTIVE COVENANTS

Rancho Viejo argues the trial court erred in declaring Rancho Viejo's exclusive use and possession of the disputed tracts is limited to hunting and grazing. Specifically, Rancho Viejo argues the 1990 Cross-Conveyance gave RVCC the right to hunt and graze the disputed tracts to the exclusion of ANB, and the trial court improperly construed this right to hunt and graze as a restriction precluding all other uses of the disputed tracts. Thus, Rancho Viejo argues a restrictive covenant was not created by the 1990 Cross-Conveyance. In contrast, ANB argues the 1990 Cross-Conveyance creates a restrictive covenant restricting Rancho Viejo's use of the property to hunting and grazing only.

*(a) Relevant Portions of the 1990 Cross-Conveyance*

The entire clause purportedly creating the restrictive covenant states:

This conveyance is made expressly subject to the rights of the State of Texas in and to each of the [mineral classified lands] and to the agreement of the parties that the Limited Partnership which is a co-owner of any portion of any of the [mineral classified lands] which lies within [that limited partnership's ranch] shall remain in exclusive possession of said lands and shall have the exclusive right to continue to occupy all portions of [the mineral classified lands] lying within [that limited partnership's ranch] for hunting and grazing purposes in consideration of that partnership paying the ad valorem taxes due on such acreage and that the other limited partnership shall, likewise, have exclusive possession of any portion of the [mineral classified lands] which lie within [that limited partnership's ranch] for hunting and grazing purposes in consideration of that partnership paying the ad valorem taxes on that portion of the [mineral classified lands] lying within [that partnership's ranch].

Rancho Viejo argues this clause merely clarified the parties' respective rights to possess and use the mineral classified lands within their respective ranches for hunting and grazing.

*(b) Applicable Law*

"A 'restrictive covenant' is a negative covenant that limits permissible uses of land." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.3(3) (AM. L. INST. 2000). "Such covenants limit the use an owner or occupier of land can make of their property." *Tarr*, 556 S.W.3d at 279. "The law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal." *Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922). "And while our jurisprudence does not favor restraints on the free use of land, [the Texas Supreme Court has] previously acknowledged that restrictive covenants can enhance the value of real property." *Tarr*, 556 S.W.3d at 279 (citing *Davis v. Huey*, 620 S.W.2d 561, 565 (Tex. 1981)). "Accordingly, when land is sold, the agreed-to covenants enter into and become a part of the consideration." *Tarr*, 556 S.W.3d at 279 (internal quotations and alterations omitted). "So the courts have always treated unambiguous covenants as valid contracts between individuals." *Id.* at 280. Therefore, "restrictive covenants are subject to the general rules of contract construction." *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998).

"Whether a restrictive covenant is ambiguous is a question of law for the court to decide by looking at 'the covenants as a whole in light of the circumstances present when the parties entered the agreement.'" *Tarr*, 556 S.W.3d at 280 (quoting *Pilarcik*, 966 S.W.2d at 478). "Like a contract, covenants are unambiguous as a matter of law if they can be given a definite or certain legal meaning." *Pilarcik*, 966 S.W.2d at 478 (internal quotations and alterations omitted). However, "if the covenants are susceptible to more than one reasonable interpretation, they are ambiguous." *Id.* "Mere disagreement over the interpretation of a restrictive covenant does not render it ambiguous." *Tarr*, 556 S.W.3d at 280.

"A paramount concern when construing covenants is giving effect to the objective intent of the drafters of the restrictive covenant as it is reflected in the language chosen." *Tarr*,

556 S.W.3d at 280. "Accordingly, courts must examine the covenants as a whole in light of the circumstances present when the parties entered the agreement, giving the words used in the restrictive covenant the meaning which they commonly held as of the date the covenant was written, and not as of some subsequent date." *Id.* (internal quotations, citations, and alterations omitted). "Words used in a restrictive covenant may not be enlarged, extended, stretched, or changed by construction, but will be given their commonly accepted meanings." *Buckner v. Lakes of Somerset Homeowners Ass'n, Inc.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied); *see also Tarr*, 556 S.W.3d at 280 (internal quotations omitted) ("[T]he words in a covenant may not be enlarged, extended, stretched[,] or changed by construction.").

A restrictive covenant should be liberally construed to give effect to its purpose and intent. TEX. PROP. CODE ANN. § 202.003(a); *see also Tarr*, 556 S.W.3d at 280 (alterations omitted) ("[W]e have continuously called for a covenant's enforcement if it is 'confined to a lawful purpose and is within reasonable bounds and the language employed is clear.'" (quoting *Davis*, 620 S.W.2d at 565)). "However, doubts should be resolved in favor of the free and unrestricted use of the premises, and any ambiguity must be strictly construed against the party seeking to enforce the restrictive covenant." *Buckner*, 133 S.W.3d at 297; *see also Tarr*, 556 S.W.3d at 280 (internal quotations, citations, and alterations omitted) ("[C]ovenants restricting the free use of property are not favored, because the right of individuals to use their own property as they wish remains one of the most fundamental rights that individual property owners possess.").

*(c) Analysis*

The disputed clause is a not a covenant restricting the use of the land. First, the clause was intended to allocate or contract possession and use of the mineral classified lands between the two owners. The clause dictates which partnership would have possession of each of the co-owned tracts. The clause goes on to state that the partnership in possession "shall have the exclusive right

*to continue to occupy* [the land in possession] for hunting and grazing purposes." The italicized phrase highlights the parties' intent to clarify their respective rights after the execution of the Cross-Conveyance by expressly stating the party who had already been grazing and hunting on the respective mineral classified lands will be able to continue grazing and hunting without interference by the party not in possession.

ANB argues the phrase regarding hunting and grazing must be a restrictive covenant because any other interpretation would cause this phrase to be surplusage. *See Ewing Constr. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 37 (Tex. 2014) ("[I]nterpretations of contracts as a whole are favored so that none of the language in them is rendered as surplusage."). ANB's argument is premised on the notion that there was no need to clarify Rancho Viejo's right to use the property for hunting and grazing once it was established that Rancho Viejo had exclusive possession of the disputed tracts. ANB's argument follows that one who has exclusive possession obviously has exclusive use of the property. However, the clause draws a distinction between possession and use. While the first part of the clause—stating which party "shall remain in exclusive possession of said lands"—focuses on the parties' respective possession, the second part of the clause—stating which party "shall have the exclusive right to continue to occupy [said land] for hunting and grazing purposes"—focuses on the parties' use.

Here, the disputed language clarifies the party in possession would not have to account to the party not in possession for the profits derived from the historical use of the disputed tracts.[8] For example, under this interpretation, it is clear that Rancho Viejo does not have to make grazing and hunting lease payments to ANB to compensate for ANB's ownership, or right to possession, of the disputed tracts. By extension, Rancho Viejo would not have to account to ANB for any

---

[8] The affidavit of Carlos Y. Benavides, III, that was included in the summary judgment evidence, indicates the RVCC Ranch was historically used for hunting and grazing.

leasing profits derived from the disputed tracts should Rancho Viejo lease the disputed tracts to a third party for hunting and grazing. This interpretation is in line with the actual text of the clause and gives a definite and certain meaning to the entire clause.

Next, there is no restrictive language in the clause restricting the use of the disputed tracts. While there are no magic words to create a restrictive covenant, there must be some indication that the parties intended the use of the property to be restricted. *See, e.g.*, *Vill. of Pheasant Run Homeowner's Ass'n, Inc. v. Kastor*, 47 S.W.3d 747, 750 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("It is the duty of [the reviewing court] . . . to review the wording of the restrictive language and determine therefrom, the intent of the drafter."). "[W]e afford contract language its plain, ordinary meaning, unless the instrument indicates terms have been used in a technical or specialized sense." *Exxon Mobil Corp. v. Ins. Co. of Penn.*, 568 S.W.3d 650, 657 (Tex. 2019).

Here, the clause states Rancho Viejo has an "*exclusive right* to continue to occupy [the disputed tracts] . . . for hunting and grazing purposes." The disputed clause uses the word "right" rather than a restricting word such as "only," "restricted," or "limited." A "right" is "[s]omething that is due to a person by just claim, legal guarantee, or moral principle." *Right*, BLACK'S LAW DICTIONARY (11th ed. 2019). ANB attempts to convert Rancho Viejo's "right" to use the disputed tracts for grazing and hunting purposes into a restriction requiring Rancho Viejo to use the disputed tracts for grazing and hunting purposes *only*. However, the clause simply gives Rancho Viejo a claim or legal guarantee to hunt and graze on the disputed tracts. Rancho Viejo's interpretation gives effect to the entire clause without stretching the meaning of the words. ANB's interpretation requires us to add words to the clause in order to give effect to its meaning. We cannot read a restrictive covenant into a clause where none exists. *See Tarr*, 556 S.W.3d at 280 (internal quotations omitted) ("[T]he words in a covenant may not be enlarged, extended, stretched or changed by construction.").

The only word in the clause that could conceivably be construed as a restriction is "exclusive." However, we do not read the word "exclusive" as excluding the party in possession from exercising all rights except hunting and grazing, *i.e.*, to the exclusion of other rights. It is clear the parties intended the rights to be exclusive to the party in possession, *i.e.*, to the exclusion of the party not in possession. Moreover, the word "exclusive" is used two other times in the same paragraph and each time it is referring to the party's rights to the exclusion of the party not in possession.

The disputed clause allocated possession and clarified which party would have the exclusive use of the mineral classified lands for grazing and hunting. Under the plain language of the 1990 Cross-Conveyance, Rancho Viejo will continue to exclusively use the disputed tracts for hunting and grazing without benefit to—or interference from—its cotenant, ANB. Further, the construction of the disputed clause would have to be enlarged, extended, stretched, and changed to give effect to ANB's interpretation. Although restrictive covenants should be liberally construed to give effect to the purpose and intent of the clause, doubts about whether a restrictive covenant exists should be resolved in favor of the free and unrestricted use of the premises. *Buckner*, 133 S.W.3d at 297.

Therefore, we hold the trial court erred in declaring that Rancho Viejo's exclusive use and possession of the disputed tracts is limited to hunting and grazing purposes, and hold the 1990 Cross-Conveyance does not restrict Rancho Viejo's use of the disputed tracts to hunting and grazing only.

### SUB-ISSUE 1(C): FIDUCIARY DUTY

The trial court's judgment contained a declaration stating: "As fiduciaries of [ANB], [Rancho Viejo has] no legal authority to impair, inhibit, or destroy [ANB's] ability to obtain its

share of the contemplated benefits from the surface use of [the disputed tracts] in the development of the underlying mineral estates."

Rancho Viejo concedes the 1998 Stipulation creates a fiduciary relationship between Rancho Viejo and ANB.[9] However, Rancho Viejo argues the fiduciary duty is limited to operations in connection with oil, gas, or mineral development. In its summary judgment response, Rancho Viejo argued the fiduciary duty it owes to ANB is akin to the duty an executive rights holder owes to a non-executive rights holder in connection with oil, gas, or mineral development. *See Lesley v. Veterans Land Bd. of Tex.*, 352 S.W.3d 479, 487 (Tex. 2011) (internal quotations and alterations omitted) ("The executive right is the right to make decisions affecting the exploration and development of the mineral estate, but it is most commonly exercised by executing oil and gas leases."); *see also KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 81 (Tex. 2015) (internal quotations omitted) (holding the duty of an executive rights holder to a non-executive is "to acquire every benefit for the non-executive that the executive would acquire for himself"). Therefore, Rancho Viejo argues, its fiduciary obligation to ANB cannot be a basis to support the trial court's second declaration regarding Rancho Viejo's lack of legal authority to build solid waste landfill facilities because the proposed improvements on the disputed tracts are not in connection with oil, gas, or mineral development.

ANB disagrees with Rancho Viejo's complaint—that Rancho Viejo only owes ANB a fiduciary duty for mineral-development purposes, but not for all purposes—because the trial court's declaration "specifically ties Rancho Viejo's fiduciary obligation to 'the development of the underlying mineral estates.'" However, ANB also contends "Rancho Viejo's proposed actions are exercises of its executive right," indicating ANB agrees that the fiduciary duty is similar to the

---

[9] Under the 1998 Stipulation, the party in possession of mineral classified lands owes a fiduciary duty to the party not in possession.

duty an executive rights holder owes to a non-executive rights holder in jointly-owned mineral estates. Finally, ANB argues Rancho Viejo's proposed flood-control improvements and groundwater-monitoring stations would be a violation of Rancho Viejo's fiduciary duty. Therefore, ANB argues, the trial court's fourth declaration on fiduciary duty supports the trial court's second declaration regarding Rancho Viejo's lack of legal authority to build solid waste landfill facilities.

*(a) Relevant Portions of the 1998 Stipulation*

Article VIII of the 1998 Stipulation imposed a fiduciary duty upon the party that retained the executive rights to lease the minerals underlying the mineral classified lands:

> Furthermore, in connection with the surface use of these lands for oil, gas and/or other mineral operations, the limited partnership who has exclusive possession to such lands shall also have the exclusive right (executive rights) to negotiate and conclude all terms in connection with such surface matters, keeping the interest of the non-executive limited partnership in mind. The standard of conduct of the limited partnership with the exclusive/executive right shall be that of which a fiduciary owes to his beneficiary or principal and shall include the right to account to the non-exclusive/executive right holder immediately upon closing and/or receipt of funds and/or benefits attributable to any transaction *in connection with* the above matters.

It is clear that "the above matters" language is referring to matters in connection with the executive rights related to oil, gas, and/or other mineral operations. The trial court interpreted this fiduciary obligation to prevent Rancho Viejo from "impair[ing], inhibit[ing], or destroy[ing] [ANB's] ability to obtain its share of the contemplated benefits from the surface use of [the disputed tracts] in the development of the underlying mineral estates."

*(b) Applicable Law*

"Whether a fiduciary duty exists is a question of law." *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007). "There exists no fiduciary or agency relationship between cotenants, or tenants in common, in the absence of an agreement or contract

providing for such." *Donnan v. Atl. Richfield*, 732 S.W.2d 715, 717 (Tex. App.—Corpus Christi–Edinburg 1987, writ denied); *see also In re Fender*, 12 F.3d 480, 486 (5th Cir. 1994) ("Under Texas law, . . . there is no fiduciary or agency relationship (which might create such a duty) between cotenants unless they create it by agreement."). Because there is no general fiduciary duty owed between cotenants, the only fiduciary obligations are those that arise from the agreement between the parties. *See Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 700 (requiring the reviewing court to determine the scope of the fiduciary duty by looking to agreements between the parties).

*(c) Analysis*

As mentioned above, both parties concede the 1998 Stipulation created a fiduciary relationship between the parties. The entire paragraph that creates the fiduciary relationship allocates the benefits and responsibilities "in connection with the surface use of [the disputed tracts] for oil, gas, and/or other mineral operations." Moreover, the sentence preceding the creation of the fiduciary relationship refers to the allocation of Rancho Viejo's exclusive right to exercise the executive rights as agent of the State under the Relinquishment Act. When read in context, it is clear the extent of the fiduciary duty between the parties is limited to matters involving the exercise of Rancho Viejo's executive rights in connection with oil, gas, and mineral operations on the disputed tracts.

Using general principles of contract construction—and under the backdrop that no general fiduciary relationship exists between cotenants—the subject matter of the fiduciary relationship created here goes no further than matters in connection with oil, gas, and mineral operations. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018) (internal quotations omitted) ("We . . . presume parties intended what the words of their contract say and interpret contract language according to its plain, ordinary, and generally accepted meaning unless the instrument directs

otherwise."). Because the trial court's declaration creates fiduciary obligations broader than the obligations created by the 1998 Stipulation, we reverse the trial court's fourth declaration.

*(d) Remand is the Appropriate Remedy*

Typically, when a trial court rules on the same issues in competing motions for summary judgment, a reviewing court should review both parties' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661. However, in its traditional motion for summary judgment, Rancho Viejo did not request a declaration consistent with its interpretation of the fiduciary obligations under the 1998 Stipulation from the trial court.

Here, ANB's motion for summary judgment requested the trial court declare: "As fiduciaries of ANB, [Rancho Viejo has] no legal authority to impair, inhibit, or destroy ANB's ability to obtain its share of the contemplated benefits from the surface use of [the disputed tracts] in the development of the underlying mineral estates . . . ." Rancho Viejo contested the breadth of ANB's proposed declaration, arguing the fiduciary obligations are limited to the negotiation of instruments in connection with the surface use of the disputed tracts for oil, gas, and/or other mineral operations. On appeal, Rancho Viejo requests a declaration that it does not owe a fiduciary duty to ANB for surface operations on the disputed tracts other than for negotiations involving oil, gas, and/or other mineral operations. However, Rancho Viejo's motion for traditional summary judgment did not request such relief. We cannot grant greater relief than was requested from the trial court. *See Horrocks v. Tex. Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex. 1993) (holding appellant is only entitled to the relief that was requested from the trial court); *Desert Palm Props., N.V. v. McFarlane*, No. 01-92-00967-CV, 1994 WL 681737, at *14 (Tex. App.—Houston [1st Dist.] Dec. 8, 1994, writ denied) (mem. op., not designated for publication) ("A movant is not entitled to greater relief tha[n] it requests in its motion for summary judgment." (citing *McConnell*

*v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993))). Because the trial court's fiduciary duty declaration is overbroad, and Rancho Viejo did not request a declaration consistent with its interpretation of the fiduciary obligations under the 1998 Stipulation, we reverse the part of the trial court's judgment regarding the fiduciary obligations and remand the case for further proceedings consistent with this opinion.[10]

### ISSUE 1: LEGAL AUTHORITY TO BUILD SOLID WASTE LANDFILL FACILITIES

In its summary judgment motion, ANB argued that Rancho Viejo has no legal authority to use the disputed tracts as the site for solid waste landfill facilities without the prior authorization and consent of ANB. On appeal, ANB argues Rancho Viejo's proposed flood-control improvements and groundwater-monitoring stations fall within the expansive definition of a "solid waste facility" under section 361.003(36) of the Texas Health and Safety Code.[11] As previously stated, the gravamen of ANB's argument is that Rancho Viejo's proposed surface use of the disputed tracts would: (1) require the consent of ANB as cotenants of the disputed tracts; (2) violate the purported restrictive covenants; and (3) be a violation of Rancho Viejo's fiduciary duty under the 1998 Stipulation. The trial court's judgment declared "[Rancho Viejo has] no legal authority to use [the disputed tracts] as sites for solid waste landfill facilities without [ANB's] authorization and consent." At summary judgment, ANB predicated its request for this declaration on the three theories mentioned above. The trial court did not state the basis for this declaration.

---

[10] The parties urge us to determine if Rancho Viejo's proposed surface uses of the disputed tracts would be a breach of fiduciary duty. However, ANB did not seek relief for a breach of fiduciary duty claim. Rather, ANB sought a declaration regarding the parties' fiduciary obligations under the 1998 Stipulation. Accordingly, the issue of breach of fiduciary duty was not before the trial court when it rendered judgment. Therefore, we cannot address whether Rancho Viejo's proposed surface use of the disputed tracts would be a breach of its fiduciary duty because that issue is not before us in this appeal. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 356 n.1 (Tex. 1987) (Gonzalez, J., concurring); *State and Cnty. Mut. Fire Ins. Co. v. Rhodes*, No. 04-96-00040-CV, 1997 WL 81257, at *3 (Tex. App.—San Antonio Feb. 26, 1997, no writ) (mem. op., not designated for publication).

[11] Section 361.003(36) of the Texas Health and Safety Code defines a "solid waste facility" as "all contiguous land, including structures, appurtenances, and other improvements on the land, used for processing, storing, or disposing of solid waste." ANB claims this definition includes the floodwater improvements Rancho Viejo proposes constructing on the disputed tracts.

Therefore, we must review all three of ANB's theories to determine whether ANB is entitled to the "no legal authority" declaration—as a matter of law—on any one of those theories. *See Cantu*, 448 S.W.3d at 489; *see also Knott*, 128 S.W.3d at 216 ("[When] the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious.").

*(a) Cotenancy*

We have already determined ANB owns the disputed tracts as a cotenant. The issue now is whether, as a matter of law, ANB's status as a cotenant precludes Rancho Viejo from building the proposed floodwater improvements without ANB's authorization and consent.

As a general rule, "one tenant in common has a right to the use and enjoyment of the common estate within due bounds . . . ." *Gillum v. St. Louis, A. & T. Ry. Co.*, 23 S.W. 717, 718 (Tex. App.—Dallas 1893, no writ); *see also NNN Cypresswood Dr. 25, LLC v. WBCMT 2007–C33 Office 9729, LLC*, 517 B.R. 828, 832 (N.D. Ill. 2013) (citations omitted) ("Under Texas law, . . . [e]ach tenant in common has an equal right to possession and use of the property, and each has the responsibility to avoid acts that are prejudicial to his cotenants . . . .").

"To say that one tenant in common must have the consent of all his cotenants to use the common estate would in many instances be practically a denial of any benefit to him from such estate . . . ." *Gillum*, 23 S.W. at 718. If this were the case, "a partition of said estate would have to be had" before the tenant in common could receive any benefit from the estate "or exercise any individual control over his interest . . . ." *Id.* Thus, a cotenant has the right to improve real property without the consent of other cotenants. *See Cleveland v. Milner*, 170 S.W.2d 472, 476 (Tex. [Comm'n Op.] 1943) ("As cotenant, his right to possess and improve the property was equal to that of [another cotenant] . . . ."); *see also Cooper Co. v. Werner*, 111 S.W.2d 823, 826 (Tex. App.—Austin 1937, no writ) (holding cotenants have equal rights to use the property for their own

benefits); *Gillum*, 23 S.W. at 718 ("All tenants in common have a right to possession of the property, and a right to use and enjoy it. Each has a right to cultivate it, and reap the proceeds of such venture.").

A cotenant's right to use the land is only limited by his or her obligation not to act with prejudice to other cotenants by wasting or despoiling the land. *See Fielding*, 32 S.W. at 1055 (holding, when a cotenancy is created, "there springs into existence a reciprocal and mutual obligation and duty resting upon each co-owner, in dealing with the common estate, to observe the right of each other, and to abstain from acts in which benefit and profit may result to one to the injury of the other . . . ."); *see also Grant v. Clouser*, 287 S.W.3d 914, 920 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding "[h]omestead rights can attach to property interests held by tenancy in common; however, such homestead rights may not prejudice the rights of a cotenant"); *Gillum*, 23 S.W. at 718 (holding a cotenant's right to cut and sell timber from jointly owned land does not confer the right to "despoil the land of its timber[]—that is, to cut, waste, and destroy all the timber . . . growing thereon").

For ANB to be entitled to the "no legal authority" declaration solely on its status as a cotenant, ANB had to show that Rancho Viejo's proposed use of the land would prejudice ANB. ANB did not present evidence in its motion for summary judgment that established, as a matter of law, Rancho Viejo's proposed use of the land would prejudice ANB or waste or despoil the disputed tracts. Absent this showing, ANB has failed to meet its summary judgment burden and is not entitled to the "no legal authority" declaration—based solely on its status as a cotenant—as a matter of law.

Furthermore, Rancho Viejo presented evidence that raised genuine issues of material fact on whether Rancho Viejo's proposed use of the disputed tracts would prejudice ANB or waste or despoil the land. First—in its response to ANB's motion for summary judgment—Rancho Viejo

provided the affidavit of Terry D. Payne, a petroleum engineer. Payne's affidavit analyzes how Rancho Viejo's proposed use would affect the disputed tracts and concludes: "Based on my review and understanding of the planned surface use of [the disputed tracts], there should be no impediment to the existing, or potential future, oil and gas development."[12] Payne's position is supported by the GLO's response to Rancho Viejo's inquiry on whether Rancho Viejo's proposed surface use of the disputed tracts would inhibit the State's ability to develop minerals. In an email attached to Ranch Viejo's summary judgment response, the GLO opined: "The existing planned surface use of Survey 112 should not adversely affect the development of oil and gas."[13]

Further, Rancho Viejo presented the affidavit of Carlos Y. Benavides, III. The affidavit states RVCC conveyed portions of its interest in the disputed tracts to RVWM. According to the affidavit, RVWM leases those portions back to RVCC and "[t]he Surface Lease allows [RVCC] to conduct agriculture operations, including grazing, raising and keeping cattle, and raising and keeping exotic game, and to conduct hunting operations on [the disputed tracts]." The affiant continues, "[RVWM's] proposed surface operations on [the disputed tracts], including construction of flood[-]control features . . . , are not inconsistent with, and will not prevent,

---

[12] In support of this statement, Payne further attested in his affidavit that:

[O]il and gas is currently being produced from beneath Survey 112 by two (2) active gas wells . . . .

With regard to future development, in the unlikely event a potential pad location was unavailable for the drilling of a potential future well, the drilling of a well from an alternative pad site using directional drilling could access the potential target. I have reviewed the drilling practices of oil and gas operators in the area of [the disputed tracts]. Considering a circular study area with a radius of 20 miles around the subject property (the distance from the subject property to Laredo), well permit data from the Railroad Commission of Texas shows there have been 580 non-vertical wells drilled in this area. Consistent with industry trends, where more and more wells are drilled as non-vertical wells, the area around [the disputed tracts] is routinely developed using directional drilling.

[13] Although the GLO's response only expressly mentioned Survey 112, Rancho Viejo's inquiry asked: Whether the State believed "Rancho Viejo's proposed surface construction of flood control features on State Mineral Classified Tracts 112 and 2366 located in Webb County, Texas . . . will negatively impact potential development or production of any of the State's minerals in Surveys 112 and 2366?"

[RVWM and RVCC's] continued use of [the disputed tracts] for hunting and grazing and agricultural purposes." Finally, the affidavit states that "[RVWM and RVCC] do not intend to change the current use of [the disputed tracts] for hunting, grazing, and agricultural purposes."

Under the appropriate standard of review, this evidence raises genuine issues of material fact on whether Rancho Viejo's proposed use of the property prejudices ANB or wastes or despoils the land. *See Knott*, 128 S.W.3d at 215 (holding the reviewing court takes as true all evidence favorable to the nonmovant, indulging every reasonable inference, and resolving any doubts in the nonmovant's favor when reviewing a summary judgment). Because this evidence raises genuine issues of material fact regarding Rancho Viejo's right to build flood-control improvements and ground-water monitoring stations on jointly owned property, the mere fact that ANB is a cotenant is not—on its own—sufficient to support the trial court's "no legal authority" declaration as a matter of law.

*(b) Restrictive Covenant*

Because we hold the 1990 Cross-Conveyance does not contain restrictive covenants limiting Rancho Viejo's use of the disputed tracts to hunting and grazing, this theory does not support the trial court's second declaration regarding Rancho Viejo's lack of legal authority to build solid waste landfill facilities. Therefore, ANB is not entitled to the second declaration on this ground.

*(c) Fiduciary Duty*

Because we hold the trial court's fiduciary duty declaration is overbroad and must be reversed, this theory cannot support, as a matter of law, the declaration regarding Rancho Viejo's lack of legal authority to build solid waste landfill facilities without ANB's authorization and consent. Moreover, the trial court's fiduciary declaration merely stated, as fiduciaries, Rancho Viejo has no legal authority to impair, inhibit, or destroy ANB's ability to obtain its share of the

contemplated benefits from the surface use of the disputed tracts in the development of the underlying mineral estates. It did not address whether the alleged fiduciary duty would require ANB's consent for Rancho Viejo's proposed surface use of the disputed tracts. Therefore, the fiduciary duty declaration cannot support the trial court's second declaration.

*(d) Remand is the Appropriate Remedy*

When both parties move for "summary judgment on the same issues and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered." *Dorsett*, 164 S.W.3d at 661. "However, if resolution of the issues rests on disputed facts, summary judgment is inappropriate, and the reviewing court should reverse and remand for further proceedings." *Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 724 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex. 1983)); *see also Stokwitz v. Tinajero*, No. 04-19-00773-CV, 2020 WL 7364656, at *4 (Tex. App.—San Antonio Dec. 16, 2020, no pet.) (mem. op.) (remanding case with competing summary judgment motions for further proceedings when resolution of an issue rested on disputed facts).

Here, ANB's status as a cotenant is the only ground before us that may support the trial court's second declaration regarding Rancho Viejo's lack of legal authority to build solid waste landfill facilities on the disputed tracts. However, the summary judgment evidence raises genuine issues of material fact on whether Rancho Viejo's proposed surface uses of the disputed tracts would prejudice ANB, or waste or despoil the land. Thus, the resolution of whether ANB—as a cotenant—can prevent Rancho Viejo's proposed surface uses of the disputed tracts rests on disputed facts. Therefore, the trial court erred in granting summary judgment on Rancho Viejo's legal authority to build solid waste landfill facilities on the disputed tracts. Accordingly, we

reverse the trial court's second declaration and remand the case for further proceedings consistent with this opinion. *See Stokwitz*, 2020 WL 7364656, at \*4.

### ISSUE 2: RANCHO VIEJO'S SUMMARY JUDGMENT

In its second issue, Rancho Viejo briefly argues the trial court erred in denying its motion for traditional summary judgment, and requests this court reverse the trial court's judgment and render judgment containing declarations antithetical to those declarations issued by the trial court. *See Tex. Mun. Power Agency*, 253 S.W.3d at 192 ("Although the denial of summary judgment is normally not appealable, we may review such a denial when both parties moved for summary judgment and the trial court granted one and denied the other."). Specifically, Rancho Viejo asks this court to render judgment that: (1) ANB does not own the disputed tracts as cotenants; (2) the 1990 Cross-Conveyance does not contain a restrictive covenant restricting the use of the disputed tracts to hunting and grazing only; and (3) Rancho Viejo does not owe ANB a fiduciary duty for surface operations on the disputed tracts other than for mineral operations.

As explained above, we conclude ANB owns the disputed tracts as a cotenant and the 1990 Cross-Conveyance does not contain restrictive covenants limiting Rancho Viejo's use of the disputed tracts to hunting and grazing only. We render judgment accordingly.

As to the fiduciary duty issue, we cannot grant greater relief than Rancho Viejo requested from the trial court in its motion for summary judgment. In its motion for summary judgment, Rancho Viejo did not request a declaration from the trial court regarding its fiduciary duty. Because Rancho Viejo failed to request this relief in the trial court, we cannot render judgment in Rancho Viejo's favor on this issue. *See Horrocks*, 852 S.W.2d at 499 (holding remand is appropriate when the prevailing party did not lay the appellate predicate for rendition because it failed to request appropriate relief from the trial court).

CONCLUSION

We, therefore, affirm the trial court's judgment in part, upholding summary judgment in favor of ANB on its declaratory judgment claim that ANB Cattle Company, Ltd. is a cotenant in the surface estates of the disputed tracts, Surveys 112 and 2366 in Webb County, Texas. However, we reverse and render judgment that:

- Rancho Viejo's use of the surface of Surveys 112 and 2366 in Webb County, Texas, is not restricted to hunting and grazing only.

The trial court's judgment also declared: "As fiduciaries of [ANB Cattle Company, Ltd.], [Rancho Viejo Cattle Company, Ltd. and Rancho Viejo Waste Management, LLC] have no legal authority to impair, inhibit, or destroy [ANB Cattle Company, Ltd.'s] ability to obtain its share of the contemplated benefits from the surface use of Surveys 112 and 2366 in Webb County, Texas, in the development of the underlying mineral estates[.]" We conclude the trial court erred and reverse this part of the trial court's judgment and remand for further proceedings consistent with this opinion.

Finally, the trial court's judgment declared: "[Rancho Viejo Cattle Company, Ltd. and Rancho Viejo Waste Management, LLC] have no legal authority to use Surveys 112 and 2366 in Webb County, Texas, as sites for solid waste landfill facilities without [ANB Cattle Company, Ltd.'s] authorization and consent[.]" Because resolution of the issue regarding Rancho Viejo's legal authority to construct solid waste landfill facilities on the disputed tracts depends on disputed facts, the trial court erred in granting summary judgment on this issue. Accordingly, we reverse this part of the trial court's judgment and remand for further proceedings consistent with this opinion.

Irene Rios, Justice